The plaintiff, Janie Baker Clarke, petitions this Court for a writ of mandamus directing the trial judge to vacate his orders limiting her ability to question potential witnesses named by defendant Association Life Insurance Company in its answer to plaintiff's interrogatory number eight (8). We grant the writ.
Petitioner is the executrix of the estate of Dr. Michael Dwayne Clarke, her husband, who is deceased. Dr. Clarke had sued Association Life Insurance Company (hereinafter "ALIC"); Bob Wright, an agent of ALIC; and, David Miller, also an agent of ALIC, alleging fraud and fraudulent suppression of facts. On February 19, 1990, Dr. Clarke died from complications arising from leukemia. On May 14, 1990, the petitioner was appointed as executrix and was substituted as plaintiff in the present action.
The facts relevant to this action are as follows:
In 1987, Dr. Clarke was in the private practice of internal medicine and gastroenterology in Montgomery, Alabama. Doctor Clarke needed health and life insurance for himself, his dependents, and his employees. He was referred to Miller, an insurance agent, to discuss his insurance needs. After speaking with Miller, Dr. Clarke applied for an insurance policy with ALIC, which approved the policy on August 1, 1987. The policy provided, in pertinent part, for:
 "(a) $1,000,000 maximum lifetime benefits and an annual deductible of $250;
 "(b) under major medical coverage, eighty percent of the first $5,000 and one-hundred percent of reasonable and necessary charges thereafter to be paid by Association, with an out of pocket maximum contribution of each insured of $1,000, and;
 "(c) a $10,000 life insurance provision, $10,000 accidental death and dismemberment provision, and a prescription drug benefit."
In case employment was terminated, Dr. Clarke and his employees were to be provided with individual policies. Dr. Clarke and his employees had the right to continue group coverage through these individual policies if employment ceased for any reason. These were referred to as "conversion" policies.
In November 1988, Dr. Clarke was diagnosed as having leukemia. Because of his illness, he was forced to close his practice. *Page 1066 
On August 29, 1989, he received a notice from ALIC informing him that he had failed to pay his premiums. As a result of this notice, Dr. Clarke contacted Wright on that same day. Wright informed Clarke that ALIC was canceling his policy, but that he could elect to take the conversion policy. On August 30, 1989, Dr. Clarke contacted a person named Williams, in the ALIC underwriting department. Williams informed him that his policy was being canceled effective August 31, 1989, and that he had the option to take the conversion policy, which would be sent to him and which would go into effect September 1, 1989. Also at this time, Dr. Clarke was informed that the benefits he would be entitled to under the conversion policy would be substantially reduced. The changes upon the conversion were: (a) a reduction in the maximum lifetime benefits from $1,000,000 to $250,000, less any monies already paid under the original policy; (b) double the premium of the original policy; (c) a change in the deductible and copayment amounts; and (d) a reduction in benefits under the major medical coverage. Dr. Clarke accepted this conversion policy with the changes, after protest.
Dr. Clarke later sued ALIC, alleging one count of fraud and two counts of fraudulent suppression of facts. With his summons and complaint, Dr. Clarke served interrogatories and requests for production on all defendants. Interrogatory number 8, which is the subject of this petition, read as follows:
 "8. Please identify all persons in the State of Alabama who have obtained a conversion policy through Defendant Association Life for the past five years."
The term "identify" was defined on the first page of the interrogatories as:
 " 'Identify' and 'Identification' — When used with reference to a person, shall mean to state the full name and present or last known address of said person, home telephone number, present employer, business address, and business telephone number. If none of this information is known by you, please state the means by which you have contacted said person."
ALIC answered that interrogatory by attaching a list of names of persons who had obtained a conversion policy, the year the persons received the policy, and an identification number. No addresses or telephone numbers were included in the list.
ALIC, objecting to disclosing the addresses and telephone numbers of those persons who had obtained ALIC conversion policies, filed a motion for a protective order. The judge denied that motion, but ordered the plaintiff's counsel not to contact these policyholders without permission of the court. On April 18, 1990, the trial judge ordered the parties to submit a proposed colloquy to be used by the plaintiff's counsel when contacting these policyholders and also ordered ALIC to produce for plaintiff's counsel the telephone numbers and other requested information with regard to the individuals in interrogatory number 8. The trial judge entered an order on May 3, 1990, ordering the plaintiff's counsel to use only the colloquy prepared by the court, which was a modification of the colloquy originally submitted by the plaintiff's counsel, when contacting any of the policyholders. This order was amended on May 23, 1990. In its final form, the order specified what the attorney was allowed to say to the policyholders and contained a list of five questions that could be asked. The order approved by the trial judge limited Dr. Clarke to the following exchange:
 "We have obtained your name from Association Life through discovery in the above-referenced action. I would like to ask you the following questions:
"1. Will you talk to me?
 "2. What was the reason for your obtaining a conversion policy from Association Life?
"3. Do you still have the policy?
 "4. When the group policy was purchased, were you informed that the benefits under a conversion policy would be the same or less than those under the group policy? *Page 1067 
 "5. What were the terms of the conversion policy you received concerning the following:
 "(a) Life Time Benefits, (b) Major Medical Benefits."
The judge also instructed the plaintiff's counsel that they could not answer any questions asked by these persons and could not undertake to represent any of them.
During a status conference on July 13, 1990, the plaintiff's counsel expressed problems with the permitted colloquy and stated that new developments required additional questions. The trial judge on July 26, 1990, ordered the plaintiff's counsel to submit another proposed colloquy. The new extended colloquy was submitted on July 31, 1990. That new proposed colloquy presented by the plaintiff's counsel would have allowed the following: (a) that counsel could examine the policyholders' conversion policies; (b) that they could ask the policyholders what type of coverage they understood they would have if their employment was terminated; (c) that they could ask what these individuals were told about their choice of conversion policies at the time their employment was terminated; and (d) that they could ask whether these persons would agree to testify in this case. On August 7, 1990, the trial judge denied the plaintiff's motion to be allowed to use this extended colloquy. The trial judge, in his order, stated that the matters the plaintiff sought to inquire about were better suited to "more formal discovery."
The plaintiff asks this Court to order the trial judge to vacate his orders of April 18, 1990, May 3, 1990, May 23, 1990, and August 7, 1990, limiting the ability of plaintiff's counsel to question these potential witnesses named in interrogatory number 8. The petitioner argues that the trial judge abused his discretion in restricting her ability to prepare her case by limiting the manner in which she could contact and question potential witnesses.
Under the Alabama Rules of Civil Procedure, discovery rules are construed broadly to allow parties to obtain information needed in the preparation of their case. Rule 26(b)(1) provides:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
Considerable discretion, although not unlimited discretion, is vested in the trial judge in determining what may be discovered and how that information may be obtained.
Because discovery involves a considerable amount of discretion on the part of the trial judge, the standard this Court will apply in reviewing his actions on a petition for a writ of mandamus is whether there has been a clear showing that the trial court abused its discretion. Thus, a writ of mandamus directing the trial judge to set aside his ruling on a discovery matter will issue only where it is clear that the trial judge has abused his discretion. See Ex parte Smith,533 So.2d 533 (Ala. 1988). A review of the record and the briefs of both parties reveals that the trial judge fashioned a method of discovery that was overly restrictive and unduly limited the discovery of needed information, and thus abused his discretion.
In this case, the plaintiff alleged that ALIC had fraudulently suppressed facts regarding the coverage to be provided under the conversion policy. Because the complaint alleged fraud, the plaintiff is accorded a broader range of discovery in order to meet the heavy burden imposed on one alleging fraud.
This Court has addressed similar questions on several occasions. In Pugh v. Southern Life and Health Ins. Co., *Page 1068 544 So.2d 143 (Ala. 1988), this Court addressed a similar situation where the trial judge had entered a summary judgment in favor of the defendant during the discovery stage of the case, thereby refusing the plaintiff the right to discover needed information regarding the history of claims and suits against the defendant insurer. The Pughs alleged fraud in Southern Life's refusal to pay their insurance claims. This Court stated that while the trial judge is vested with considerable discretion, that discretion is not "unbridled" and that the trial judge, in the exercise of his discretion, must endeavor to protect the interests of both parties. In reversing the summary judgment, we stated:
 "It is well settled in this state that evidence of prior similar acts is admissible to show fraud, scheme, motive, or intent. Also, where fraud is alleged, we allow a wider latitude in the discovery of evidence."
Id. at 145. (Citations omitted.) Similarly, in the present case the plaintiff sought to obtain information as to other persons who had obtained conversion policies from ALIC and sought to ask what representations ALIC had made to those persons regarding the coverage provided under their conversion policies. This information, like the information sought inPugh, would greatly assist the plaintiff in proving fraud and in identifying potential witnesses.
In Ex parte Allstate Ins. Co., 401 So.2d 749 (Ala. 1981), the trial judge ordered Allstate to answer the interrogatories and to provide the requested information. Allstate then brought a petition for a writ of mandamus to prevent the plaintiff from discovering the names and addresses of similarly situated persons. This Court, in denying the petition, held that "Evidence of similar misrepresentations made to others by the defendant is admissible in a fraud action. Therefore, the information sought . . . could very easily lead to admissible evidence." Id. at 751. (Citations omitted.) See also, Ex parteMcClarty Const. Equip. Co., 428 So.2d 629 (Ala. 1983) (information is discoverable if it appears reasonably calculated to lead to the discovery of other relevant and admissible evidence); Ex parte Georgia Cas. Sur. Co.,531 So.2d 838 (Ala. 1988); Ex parte State Farm Mut. Auto. Ins. Co.,452 So.2d 861 (Ala. 1984).
While the present case differs to some degree from the cases discussed above, the principle is the same. The trial judge here, in fashioning a method of discovery, went beyond his discretion and created an awkward procedure, preventing meaningful contact with persons who may have possessed needed information. While not expressly preventing the discovery of the information sought, the discovery order could have, and, according to the plaintiff, did have the effect of preventing her from obtaining useful and meaningful information.
Moreover, this Court has stated on several occasions that in a fraud action the plaintiff is accorded a considerably wider latitude in the discovery process so that he will be able to meet the heavy burden of proof placed on him. The persons the plaintiff sought to speak with either presently hold or at some time have held a very similar conversion policy with ALIC and are, quite possibly, one of the few sources of information for the plaintiff in the preparation of her case. Knowledge of the representations made to them and the amount of coverage provided under their particular policies is vital in the preparation of the plaintiff's case against ALIC. The trial judge's orders limiting contact with these persons to that allowed by the approved "colloquy" was unduly restrictive and, thus, amounted to an abuse of discretion.
Therefore, the petition for a writ of mandamus is granted, and the trial court is directed to set aside its orders of April 18, 1990, May 3, 1990, May 23, 1990, and August 7, 1990, restricting the plaintiff's contact with the other policyholders named in interrogatory 8.
WRIT GRANTED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur. *Page 1069