PER CURIAM.
Margaret A. Stephens and Paul E. Stephens petition this Court for a writ of mandamus directing Judge Thomas R. Jones, of the Circuit Court of Bibb County, to vacate a protective order that imposed certain restrictions on discovery. The restrictions were placed upon informal interviews that the Ste-phenses intend to conduct with certain former holders of insurance policies issued by the defendant Associated Doctors Health and Life Insurance Company. The issue presented by this petition is whether the circuit court abused its discretion in placing the restrictions on the contacts with the former policyholders.
On August 1,1995, the Stephenses filed an action against Life Insurance Company of Georgia (“Life of Georgia”), Associated Doctors Health and Life Insurance Company (“Associated Doctors”), and insurance agent Fred Smith, seeking money damages for *1309 fraud, misrepresentation, negligent hiring, and negligent supervision and/or training.[1] The Stephenses contend that agent Fred Smith sold them several health insurance policies that Smith represented would pay as much as, or more than, the policy Margaret Stephens had in force through her employer at that time. The Stephenses further contend that the defendants defrauded them by misrepresenting the facts concerning these policies so as to induce them to buy the policies. To obtain evidence to prove these allegations and evidence of a scheme or plan to defraud, the Stephenses propounded interrogatories to the defendants in which they sought the names of former holders of policies issued by Associated Doctors. The Ste-phenses limited their request to former policyholders who had purchased their policies from Fred Smith from 1990 through the date of the interrogatories.
The defendants objected to the interrogatories on the grounds that they sought information the defendants said was “irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, over-broad, burdensome, and unduly prejudicial to defendant[s] and [their] customers and business relations.” In response, the Stephenses filed a motion to compel the defendants to answer the interrogatories, basing their motion on the grounds that “evidence of a pattern or practice of fraud is discoverable” and that they had purposely limited the request to former policyholders so as not to jeopardize the defendants’ business or proprietary interests.
The circuit court issued a protective order in which it ordered the defendants to answer the interrogatories regarding former policyholders; however, the court placed restrictions on the contacts that could be made with the former policyholders. The circuit court imposed the following restrictions that are challenged in this petition:
“(B) The parties (including their attorneys or persons acting on their behalf) shall not contact, either in person or by telephone, any person on the list without a representative of the other party being present for the duration of the contact;
“(C) The parties shall not communicate to such person the allegations of the plaintiffs in this case.”
The Stephenses contend that the circuit court abused its discretion when it placed these two restrictions on the contacts with the former policyholders. More specifically, they argue that requiring that opposing counsel or some other representative[2] be present during any and all contacts with the former policyholders infringes upon their right to prepare their case and violates the work-produet privilege. Furthermore, they argue that restriction “(B)” will cause “unnecessary logistical obstacles.” As to restriction “(C),” the Stephenses claim that it prevents them from conducting any meaningful interviews with the former policyholders regarding Smith’s alleged fraudulent conduct in regard to the sale of the policies.
The defendants answer that they have shown good cause to support the restrictions imposed by the circuit court. They argue that requiring that opposing counsel be present when contact is made will protect the former policyholders from “multiple or annoying contacts” since there will need to be only, one interview with the former policyholders. The defendants also argue that the restrictions will protect the business interest and reputation of Fred Smith. They claim that even though Smith is no longer an agent with Associated Doctors he could still attempt to sell insurance to one of the former policyholders and that unlimited contact with the former policyholders could create a *1310 “cloud” over Smith’s relationship with those people. Last, the defendants argue that the restrictions do not prevent the meaningful questioning of the former policyholders, and they insinuate that the true intentions of the Stephenses in seeking unrestricted contact is to improperly solicit the former policyholders as clients against the defendants. Similarly, the amicus curiae brief submitted by the Alabama Defense Lawyers Association (ADLA) argues that the restrictions may be imposed to prevent the Stephenses’ attorneys from improper solicitation of the former policyholders. The ADLA asserts that these restrictions may be seen as unreasonable “only if the intentions of petitioner’s counsel [are] to solicit additional litigants.”
The Alabama Rules of Civil Procedure, adopted in 1973, were intended to permit very broad and liberal discovery so as to allow parties to obtain information needed in preparation of their case. See Rule 26(b)(1), Ala.R.Civ.P. Furthermore, it is well established that the rules regarding discovery are to be broadly and liberally construed, to ensure that the spirit of the rules is carried out. Assured Investors Life Ins. Co. v. National Union Assocs., Inc., 362 So.2d 228 (Ala.1978). However, while the rules are to be so construed, the right to discovery is not unlimited and the circuit court does have broad power to control the discovery process to prevent its abuse by any party. Id., 362 So.2d 228, 231. Rule 26(c) authorizes the circuit court, upon a showing of good cause, to enter a protective order to prevent the abuse of discovery.
Rule 26(e), however, does not authorize the circuit court to set arbitrary limits on discovery, “but instead vests the circuit court with discretion to control the discovery process.” Campbell v. Regal Typewriter Co., 341 So.2d 120, 123 (Ala.1976), modified on other grounds, Sharp Electronics Corp. v. Shaw, 524 So.2d 586 (Ala.1987). Therefore, decisions affecting discovery are within the sound discretion of the circuit court, and on review the question becomes whether, under all the circumstances, the circuit court has abused that discretion. Id. When one challenges a circuit court’s protective order, “mandamus is the proper means of review to determine whether a trial judge abused his discretion in ordering discovery.” Ex parte Allstate Insurance Co., 401 So.2d 749, 751 (Ala.1981).
We conclude that the circuit court did abuse its discretion in placing the restrictions on contacting and interviewing the former policyholders. A review of the petition, the exhibits, and the briefs in opposition reveals that the restrictions were “overly restrictive and unduly limited the discovery of needed information.” Ex parte Clarke, 582 So.2d 1064, 1067 (Ala.1991).
The first step in determining whether a court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the claim. The Ste-phenses allege fraud. This Court has held that a party alleging fraud is entitled to a broader range of discovery than is usually allowed, because of the greater difficulty in proving fraud. Id. See also Ex parte Rowland, 669 So.2d 125 (Ala.1995). With this in mind, we will review the contested restrictions.
The first restriction requires that opposing counsel be present each time a former policyholder is contacted in any manner, by either party. The Stephenses argue that the presence of opposing counsel will be an intrusion into their right to freely and strategically plan their case. They contend that to obtain the information they need to develop their case they will have to ask the former policyholders questions that will reveal to defense counsel the plaintiffs’ strategy and mental impressions for the case. Thus, the Ste-phenses are claiming that the presence of opposing counsel will violate the work-product privilege.
Rule 26(b)(3), Ala.R.Civ.P., addresses the discovery of counsel’s work product made in preparation for trial:
“(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other par *1311 t/s representative (including the other party’s attorney, consultant, surety, indem-nitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party’s case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.”
Rule 26(b)(3) allows for the discovery, upon a showing of “substantial need” and “undue hardship,” of relevant facts that are contained in trial preparation materials; however, the last sentence of that rule protects against the disclosure of an attorney’s mental impressions or legal theories that may be included in such materials. This Court applied this general principle in Ex parte Alabama Power Co., 280 Ala. 586, 196 So.2d 702 (1967):
“It makes a difference as to whether the product of the lawyer’s work consists of relevant facts, discovered by him and not available to his adversary, upon which he relies to recover, or whether the work product consists of legal theories and contentions upon which he relies to recover upon a given set of facts. The general rule is that claims and contentions need not be [disclosed].”
Id., 280 Ala. 586, 592, 196 So.2d 702, 707-08.
Our work-product rule is a codification of the holding in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). See, Committee Comments, Rule 26(b)(3), Ala. R.Civ.P. In Hickman, the Supreme Court refused to allow discovery of both written and oral statements made by witnesses to defense counsel during informal interviews. The Court reasoned that to allow such discovery would allow opposing counsel to peer into the all-important mental impressions and strategies of defense counsel, and that an attorney’s mental impressions of a ease lie at the very heart of our justice system. Id., 829 U.S. at 510-11, 67 S.Ct. at 393-94, 91 L.Ed. at 462.
The Court expressed the reasons for protecting an attorney’s work product in this often-quoted passage:
“Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a Ghent’s case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients’ interests. This work is reflected, of course, in interviews, statements, memo-randa, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case [citation omitted] as the ‘Work product of the lawyer.’ Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney’s thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.”

Id.

The defendants contend that Hickman and various cases following it are inapplicable to this ease because, they say, Hickman and Rule 26(b)(3) are concerned only with the disclosure of tangible items or writings under the work-product privilege. They argue that the work-product privilege does not apply because there are no writings or tangible *1312 documents involved in this case; therefore, they say, their counsel or representative should be allowed to be present when the interviews take place. While the defendants are technically correct in arguing that Rule 26(b)(3) provides protection only for tangible items, their argument that the lack of a written document allows them to be present during the interview of witnesses defies the underlying logic of the work-product privilege created by Hickman. The purpose of the privilege is to allow an attorney to prepare the strategies and theories of his or her case without the intrusions of opposing counsel. Therefore, it only makes sense that an attorney’s mental impressions should be afforded protection even if they are not in writing. Questions asked by an attorney during a pre-trial interview would seem to exhibit some of the purest forms of mental impressions, conclusions, and formulation of strategy.
Furthermore, while Rule 26(b)(3) technically provides protection only for documents and tangible items, “Hickman v. Taylor continues to furnish protection for work product within its definition that is not embodied in tangible form.” 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 337-38 (1994). Hickman is considered to have afforded protection to intangible work product because in that case the Supreme Court expressly prohibited a party from requiring an opposing attorney to provide his oral recollections of what a witness told him during an oral statement. Id., 329 U.S. at 512, 67 S.Ct. at 394, 91 L.Ed. at 463. Furthermore, the Court expressly stated that work product is reflected in “interviews, statements, ... and countless other ... intangible ways” in which an attorney prepares a case, and it held that these forms of work product therefore deserve protection. Id., 329 U.S. at 511, 67 S.Ct. at 393, 91 L.Ed. at 462. See also, 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 337, n. 4 (1994). This statement by the Supreme Court goes to the very issue presented in this case. It would be illogical to afford protection to an attorney’s mental impressions that are encompassed in tangible documents while not protecting those same mental impressions as they are being formed.
In International Business Machines Corp. v. Edelstein, 526 F.2d 37 (2d Cir.1975), the United States Court of Appeals for the Second Circuit, on a petition for a writ of mandamus, struck down a protective order that had provisions very similar to the restrictions imposed in this case. In that case the federal district court had prevented IBM attorneys from privately interviewing adverse witnesses. 526 F.2d at 40-41. The district court had ordered that opposing counsel be given the opportunity to be present when counsel for either side attempted to interview a witness and that if opposing counsel could not be present then a stenographer was to be present. Id. The court of appeals relied on Hickman to strike down the requirement that opposing counsel be present during interviews of opposing witnesses, noting that “the legitimate need for confidentiality in the conduct of attorneys’ interviews, with the goals of maximizing unhampered access to information and insuring the presentation of the best possible case at trial, was given definitive recognition by the Supreme Court in Hickman v. Taylor,” 526 F.2d at 42.
Pre-trial interviews play a major role in the way an attorney formulates the strategy of his case. In these interviews a lawyer attempts to find evidence to support his case or even to determine if he has a case. This requires that the attorney may in some instances reveal his mental impressions or conclusions on the case, often drawing from information he may have already developed from other sources; thus, the need for privacy while conducting these interviews. Requiring the presence of opposing counsel at interviews thwarts the exploratory purpose of conducting pretrial interviews by virtually transforming the interviews into informal depositions. In International Business Machines, supra, the court, in a footnote, pointed out that pre-trial interviews and depositions have entirely different purposes:
“In contrast to the pre-trial interview with prospective witnesses, a deposition serves an entirely different purpose, which is to perpetuate testimony, to have it available at trial, or to have it available for use or confrontation at the trial, or to have the witness committed to a specific representa *1313 tion of such facts as he might present. A desire to depose formally would arise normally after preliminary interviews might have caused counsel to take a deposition.”
Id., 526 F.2d at 41, n. 4.
The attorneys for the Stephenses are attempting to prove a scheme or plan by the defendants to defraud; therefore, they will need to inquire of the former policyholders what they were told by the defendants. In developing their inquiries it may be necessary for the attorneys to reveal their strategies or impressions of the ease, in order to obtain the information needed to prove their case. “This is part of an attorney’s so-called work product,” and accordingly the court shall strive to prevent the disclosure of the attorney’s mental impressions or strategies. International Business Machines, 526 F.2d at 41. Furthermore, the mental impressions or strategies that may be revealed through the informal interviews are due to be afforded the same type of protection that is given to “opinion work product.” See 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 338 (1994).
The committee comments to Rule 26(b)(3), Ala.R.Civ.P., state that the protection provided by that rule for an attorney’s mental impressions and theories is an absolute protection. While intangible work product deserves strong protection, we hold that such protection is not absolute. The Supreme Court’s statements in Hickman, supra, imply that the protection is not absolute with regard to the discovery of oral statements. The Court stated: “[A]s to oral statements made by witnesses to Forten-baugh, whether [they be] in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this ease so as to justify production.” Hickman, 329 U.S. at 512, 67 S.Ct. at 394, 91 L.Ed. at 463. Recently, the United States Court of Appeals for the Eleventh Circuit, interpreting Hickman and other cases regarding opinion work product, held that while opinion work product does not have absolute protection it nevertheless “enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.” Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386 (11th Cir.), modified on other grounds, 30 F.3d 1347 (11th Cir.1994), cert. denied, — U.S. -, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995).
The facts in this case do not present such “rare and extraordinary circumstances” as to justify requiring or allowing opposing counsel to be present during an informal interview of former policyholders in which an attorney is attempting to develop his case. The defendants’ reasons supporting the order requiring the presence of opposing counsel are that it will prevent the former policyholders from being subjected to multiple contacts, protect the business interest of Fred Smith, and prevent the improper solicitation of the former policyholders.
The first reason, to prevent multiple contacts, clearly does not present a rare or extraordinary circumstance that would justify the restrictions in the protective order issued by the circuit court. In fact, this Court knows of no reason that would require the former policyholders even to speak with either counsel. It is entirely up to the former policyholders whether to consent to speak with the attorneys; therefore, the anticipated danger of multiple contacts does not justify the restrictions in the protective order. The former policyholders may simply refuse to speak with the attorneys if the contacts become annoying or too frequent— or for any other reason.
Second, the argument that the presence of opposing counsel is needed to protect the business interest of Associated Doctors’ former agent Fred Smith is not persuasive, and it is not clear how the presence of opposing counsel will protect that interest. First, Smith is a former agent of Associated Doctors. Thus, the two corporate defendants have no true interest in protecting his business interest. Smith, who is a named defendant, might have grounds to make this argument on his own behalf, but he has not made such an argument.[3] Second, it is un *1314 clear to this Court how the mere presence of opposing counsel is supposed to protect the interest of Smith, given that the former policyholders will still be contacted and the questions will pertain to the representations Smith made to them.
Third, the defendants argue that the restrictions in the protective order are appropriate to prevent improper solicitation of the former policyholders. The defendants point out that the Stephenses’ lawyers had filed four identical actions against them before filing the Stephenses’ action. Furthermore, the Stephenses filed their action after their names had been listed on a witness sheet in one of the earlier actions. From these facts the defendants, and the ADLA as amicus curiae, insinuate that the Stephenses’ attorneys may improperly solicit employment by the former policyholders. They argue that the only reason the Stephenses’ attorneys want closed-door unrestricted interviews is to solicit these policyholders. These arguments lose sight of the purpose of discovery and the need for all lawyers, whether representing defendants or plaintiffs, to have the ability to develop their cases and prepare case strategy. The defendants’ arguments also fail to take into account that a lawyer is an officer of the court and will not be presumed to violate the Rules of Professional Conduct.
The mere fact that a party was a witness in an earlier fraud action and then filed an action alleging the same type of fraud does not mean that the party was improperly solicited. Nothing prevents a lawyer from accepting employment from someone whom he may have interviewed as a witness in another case, so long as the lawyer does not violate Rule 7.3, Ala.R.Prof.Conduct, which reads:
“A lawyer may not solicit or cause to be solicited on his behalf professional employment from a prospective client, when a significant motive for the lawyer’s doing so is the lawyer’s pecuniary gain. The term ‘solicit’ includes contact in person or by telephone.”
Nothing in this case tends to suggest that the Stephenses’ lawyers impermissibly solicited them for employment.
This Court’s research has disclosed no Alabama appellate decisions on the use of protective orders to prevent potential unethical conduct. However, the California Supreme Court has addressed the issue in a case with similar facts, Colonial Life & Accident Ins. Co. v. Superior Court, 31 Cal.3d 785, 647 P.2d 86, 183 Cal.Rptr. 810 (1982). In Colonial, the plaintiff was attempting to discover a list of other insurance claimants whose claims had been handled by a particular claims adjuster. The trial court ordered Colonial to comply with the plaintiff’s discovery request, but prohibited any contact with the claimants on the list until they had received a court-approved letter and had consented to the interview. 31 Cal.3d at 789, 647 P.2d at 88, 183 Cal.Rptr. at 812. Colonial asked the trial court to enter an additional order barring the plaintiff’s attorney from seeking employment from any of the other claimants or encouraging them to file a similar lawsuit, arguing that the restriction was needed to prevent the attorney from soliciting the other claimants. Id. The trial court refused to grant such an order, and Colonial petitioned the Supreme Court of California for a writ of mandamus, which the court denied. In denying the writ, the court stated:
“The ‘communication’ involved here is not for the purpose of ‘seeking professional employment for pecuniary gain’ but for the purpose of developing relevant evidence in an existing lawsuit. ‘It is, of course, entirely proper in multiple-claimant accidents for an attorney representing one victim to call on others in the course of investigation and development of evidence.’ [Citations omitted.] Similarly, it is proper in this context for plaintiff’s attorney to contact other claimants through the procedure devised by the court. We cannot join in Colonial’s assumption that, when faced with an opportunity to solicit clients in the course of legitimate discovery, plaintiff’s attorney will ignore his ethical obligations.”
31 Cal.3d at 793-94, 647 P.2d at 91, 183 Cal.Rptr. at 815.
Applying the same reasoning as the California court, this Court cannot join in the *1315 defendants’ assumptions that the Stephenses’ lawyers will violate their ethical obligations when interviewing the former policyholders. A lawyer is an officer of the court and is charged with the duty to uphold and honor the Rules of Professional Conduct. Furthermore, before being licensed to practice law in this state, a lawyer must take an oath, in which the lawyer swears that he “will demean [himself] as an attorney, according to the best of [his] learning and ability, and with all good fidelity, as well to the court as to the client.” Ala.Code 1975, § 34-5-15. This Court will presume, until it is proven otherwise in the appropriate forum, that an attorney at all times acts in an ethical manner and upholds the oath of the profession.[4]
Normally, it is not the role of the circuit court to take steps to prevent unethical conduct; however, that is not to say that in certain situations it would be improper for the court to enforce the rules or take steps to prevent unethical conduct. But if there is no evidence of improper conduct before the court, it would be an abuse of discretion for the court to reach out and place restrictions on counsel simply based on an alleged fear of potential unethical conduct.
There is no evidence that the Stephenses’ lawyers have acted unethically. At most, there is a fear on the part of the defendants that the Stephenses’ lawyers may seek to solicit employment by the former policyholders or that the interviews may create more litigation. Such a fear, without more, does not justify an intrusion upon such an important aspect of legal representation as discovery. A protective order based on such speculation would be an abuse of discretion and would be due to be vacated. Furthermore, this Court held in Ex parte Asher, Inc., 569 So.2d 733 (Ala.1990), that fear on the part of an insurance company that its turning over names of other insureds to the plaintiffs would lead to further litigation was not a sufficient ground to support a finding of irreparable harm. 569 So.2d at 738. Such a fear on the part of the defendants in this ease is not sufficient to support the protective order requiring the presence of opposing counsel at the interviews.
The second restriction at issue prevents the parties from “communicatpmg] ... the allegations” of the Stephenses’ case to the former policyholders. The Stephenses contend that this prevents them from meaningfully questioning the former policyholders. The defendants argue that the restriction would not prevent meaningful, straightforward questioning regarding the statements made by Smith, but would prevent the attorneys from making prejudicial or inflammatory remarks such as “we represent the Ste-phenses who were defrauded by Associated Doctors and we think (or want to see if) they defrauded you too.”
This restriction has the potential of overly restricting the attorneys in interviewing the former policyholders. It would prevent the attorneys from conveying their reasons for conducting the interview. Furthermore, it would prevent the attorneys from answering questions from the policyholders regarding the purpose of the interview, questions the policyholders are sure to ask. Once again, it appears that the defendants are seeking to prevent unethical conduct by the Stephenses’ lawyers. The discussion above regarding the ethical obligations of a lawyer controls this issue as well; thus, the circuit court having been presented no evidence of unethical conduct, that court abused its discretion by restricting the interviews as it did by the second restriction at issue here.
Furthermore, this is a fraud action and, as stated earlier, a plaintiff is accorded a broader range of discovery in a fraud action. Ex parte Clarke, 582 So.2d 1064 (Ala.1991). In Clarke this Court held that a five-question colloquy created by the circuit court was overly restrictive and had the effect of preventing meaningful discovery. 582 So.2d at 1068. Clarke was also an insurance fraud *1316 action in which the plaintiffs were attempting to discover a plan or scheme by interviewing other policyholders. 582 So.2d at 1066. While the Court recognizes that in this case the circuit court did not go so far as to restrict the parties to a limited set of questions, we nonetheless hold that the circuit court, by imposing a blanket prohibition, has created a procedure that has the possibility of preventing meaningful discovery in this fraud action.
Based on the foregoing reasons, we hold that the circuit court abused its discretion in imposing restrictions “(B)” and “(C)” of its protective order, restricting the contacts and communications with the former policyholders. The petition for the writ of mandamus is granted, and the circuit court is directed to set aside restrictions “(B)” and “(C)” of its protective order.
WRIT GRANTED.
ALMON, SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., dissent.

. Associated Doctors was an Alabama corporation, with its principal place of business in Birmingham. It merged with Life of Georgia in January 1994 and is now operated as a division of Life of Georgia. The Stephenses bought the policies in question in 1992 from Fred Smith, an agent for Associated Doctors. Associated Doctors no longer conducts any operations in Alabama.

. Although the order speaks of a "representative” of the other party, the parties have briefed the case as though a “representative” is an attorney for the other party, so we will decide the case accordingly. We see no legally significant difference in requiring the presence of a party’s attorney and requiring the presence of some other representative.

. To the extent the corporate defendants' brief can be viewed as making this argument on behalf of Smith individually, we reject it as a ground *1314 supporting the protective order, for the reason stated in the following text.

. This Court has the responsibility to supervise the conduct of lawyers and has promulgated the Alabama Rules of Disciplinary Procedure to guide the State Bar in disciplinary proceedings. These rules confer on the Disciplinary Commission and the Disciplinary Board of the Alabama State Bar the jurisdiction to discipline lawyers, with review by this Court. Rule 1, Ala.R.Disc.P. Furthermore, Rule 19(a) of those rules states that clear and convincing evidence is the standard of proof required in all disciplinary proceedings.