The plaintiffs George W. Finkbohner III and Sandra Finkbohner petition this Court for a writ of mandamus directing the trial court to compel the defendant Principal Mutual Life Insurance Company ("Principal Mutual") to comply with a discovery request. The petition is granted in part and denied in part.
Sandra Finkbohner underwent a surgical procedure to repair a ventral hernia. It appears from the evidence presented that this procedure was determined by Ms. Finkbohner's personal physicians and her medical insurer, Principal Mutual, to be medically necessary to correct an abdominal problem that had arisen a few months before, during Ms. Finkbohner's pregnancy. It also appears that Ms. Finkbohner's physicians submitted a request for a "presurgery review" to Principal Mutual, specifically referencing a procedure assigned code number 49560 — the procedure to repair the hernia. Principal Mutual later paid all of the expenses associated with this procedure. At the same time they repaired Ms. Finkbohner's hernia, however, her physicians also performed an abdominoplasty, or, as it is commonly referred to, a "tummy tuck." Ms. Finkbohner's physicians had apparently not mentioned this procedure in their request for the presurgery review, and Principal Mutual had not authorized payment for it. Upon receiving a bill for both procedures (one coded 49560 and the other coded 15831), and after consulting a cosmetic surgeon, Principal Mutual denied the Finkbohners' claim for expenses associated with the abdominoplasty on the ground that such a procedure constituted "cosmetic surgery," which is defined in the Finkbohners' policy as follows: *Page 411 
"Surgery to change:
"a. the texture or appearance of the skin; or
 "b. the relative size or position of any part of the body;
 "when such surgery is performed primarily for psychological purposes or is not needed to correct or improve a bodily function."
(Emphasis added.)
The Finkbohners sued Principal Mutual, alleging breach of contract and bad faith denial of an insurance claim. Principal Mutual denied liability, based on the wording of its policy. The Finkbohners' bad faith claim is based in part on Principal Mutual's negative response to the following interrogatory:
 "Does [Principal Mutual] contend that the surgical procedure related to the claim for benefits which forms the basis of this complaint was performed primarily for psychological purposes?"
The Finkbohners also rely on the certificate of insurance that was provided to them by Principal Mutual. This certificate, which summarizes the coverage provided under the policy, contains a different definition of "cosmetic surgery" than that contained in the policy. The certificate states:
"Cosmetic surgery means surgery to change:
"— the texture or appearance of the skin; or
 "— the relative size or position of any part of the body;
 "when such surgery is performed primarily for psychological purposes and is not needed to correct or improve a bodily function."
(Emphasis added.) The Finkbohners' bad faith claim, as we understand it, can basically be summarized as follows: Although it may have had a legitimate reason (based on the cosmetic surgeon's opinion) for concluding that the abdominoplasty was "not needed to correct or improve a bodily function," Principal Mutual is nonetheless liable for bad faith failure to pay the claim 1) because it is estopped to rely on the definition of "cosmetic surgery" contained in the policy (on the ground that it is different from the definition contained in the certificate) and 2) because it has admitted (and, presumably, knew all along) that the surgery was not performed primarily for psychological purposes. According to the Finkbohners, Principal Mutual knew when it denied the claim that it could not satisfy the definition of "cosmetic surgery" contained in the certificate, which requires that the surgery be performed primarily for psychological purposes and that it not be needed to correct or improve a bodily function.
The following interrogatories and requests for production, which were objected to by Principal Mutual on the grounds that they were overly broad, unduly burdensome, and not likely to lead to the discovery of relevant information, form the basis for the Finkbohners' petition:
 "10. State whether or not there have been any claims against (i.e., no lawsuit) and/or lawsuits pending against [Principal Mutual] claiming injury or damage due to bad faith denial of a claim in the State of Alabama from 1992 to the present. If so, for each such claim and/or lawsuit, please provide:
 "a) The date the claim was made or the date each lawsuit was filed;
"b) The court in which such lawsuit was filed;
 "c) The action or court number of each said lawsuit;
 "d) The name and address of all parties, complainants, or other individuals involved; claims and allegations of each such complaint or suit;
 "e) A full and complete statement of the substance of all claims and allegations of each such complaint or suit; and
 "f) The disposition of each said complaint or lawsuit.
". . . .
 "18. Please identify by claimant's name, address and telephone number, all claims for benefits filed in the State of Alabama over the past five (5) years which were denied, in whole or in part, upon the grounds that the procedure upon which said claim was based was cosmetic in nature." *Page 412 
Relying on this Court's recent decision in Ex parte Rowland,669 So.2d 125 (Ala. 1995), the Finkbohners contend that the trial court abused its discretion in denying their motion to compel Principal Mutual to respond to these interrogatories and requests for production. Principal Mutual argues that the trial court had broad discretion in ruling on the Finkbohners' discovery request and that it did not abuse that discretion in this instance.
In Rowland, a fraud and breach of contract action arising out of the purchase of an automobile, the plaintiff purchaser petitioned for a writ of mandamus directing the trial court to permit him to discover any fraud actions that had been filed against the defendant dealer in the previous 10 years. Because the plaintiff's fraud claim was based on allegations that the defendant had misrepresented the size of the automobile's engine, the trial court had permitted discovery of only those previous fraud actions that may have been based on allegations of misrepresentations of engine size. The plaintiff argued that such a restriction was at odds with his broad right of discovery in a fraud action and that the trial court had abused its discretion. We agreed and granted the writ, stating:
 "A mandamus petition is a proper method for determining whether a trial judge has committed an abuse of discretion in limiting discovery. Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala. 1981). The Alabama Rules of Civil Procedure were intended to allow for very broad and liberal discovery, within reason. Trial judges have discretion to control discovery and to prevent abuse of the discovery process by the parties. However, arbitrary limits placed on discovery are not within the discretion of the trial judge. The rules envision full discovery, which has the effect of saving time, effort, and money, in an effort to achieve substantial justice. Campbell v. Regal Typewriter Co., 341 So.2d 120, 123-24 (Ala. 1976) (citations omitted); see Rule 26(b)(1), Ala. R. Civ. P.
 "To be entitled to a writ of mandamus compelling a trial judge to permit full discovery, the petitioner must demonstrate that the circuit court clearly abused its discretion. Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991). The first step in determining whether the court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the claim. Rowland has alleged fraud in his complaint. Where a plaintiff alleges fraud, discovery must necessarily be broader than it would be in other cases, 'in order to meet the heavy burden imposed on one alleging fraud.' Id.
 "In Clarke, the plaintiff alleged fraud and fraudulent suppression of facts by his insurance company. The plaintiff sought to discover the names and addresses of previous policy holders who might have been subject to similar acts of fraud by the insurance company. Although the circuit court granted the plaintiff's discovery request in part, the order of the court remained 'overly restrictive' and 'unduly limited,' because it so narrowly circumscribed the discovery process that the plaintiff could not garner any benefit from the discovery. Clarke, supra, at 1066-67. At the outset, the Court stated:
 " 'It is well settled in this state that evidence of prior similar acts is admissible to show fraud, scheme, motive, or intent. Also, where fraud is alleged, we allow a wider latitude in the discovery of evidence.'
 "Clarke, supra, at 1068 (quoting Pugh v. Southern Life Health Ins. Co., 544 So.2d 143, 145
(Ala. 1988)).
 "Like the plaintiff in Clarke, Rowland sought discovery of the names of plaintiffs who had brought fraud actions against the defendant in the past. Whether any prior acts of fraud concern engine size, mileage, damage, or other facts is immaterial. What is consequential is that Rowland seeks to learn of prior cases brought against Bondy's Ford in which plaintiffs have alleged fraud, the most likely occurrence of which would be fraud in the inducement concerning the purchase of vehicles. Thus, some earlier fraud actions need not relate to the specific focus of the fraud Rowland alleges, a fraud relating to engine size, for the discovery regarding earlier actions to be relevant to Rowland's *Page 413 
 action. Discovery of similarly situated plaintiffs could very well lead to admissible evidence of scheme, motive, or intent on the part of Bondy's Ford. Likewise, Rowland's discovery request is not overly broad, because (1) there is no indication that it would require the defendants to disclose frauds not analogous to that alleged in Rowland's claim, for example, frauds not concerning the purchase of vehicles, and (2) compliance with it should not be overly burdensome. If Bondy's Ford must search for cases involving misrepresentation of engine size, it would presumably come across all other cases involving misrepresentation, because the former compose a subset of the latter.
 "Bondy Ford's argument that Rowland's discovery request is unnecessary because this information is easily available from the records located at the Houston County Courthouse does not support the circuit court's limitation on discovery. First, not all of the fraud actions brought against Bondy's Ford over the past 10 years are sure to have been filed in Houston County. Such actions could have been filed in other Alabama counties and in other states as well. Second, this information is more readily available to Bondy's Ford, and should, therefore, be provided by the defendant, since one of the purposes of discovery is to save time, money, and effort. See Campbell, supra, at 124. Moreover, in a fraud action the plaintiff is given wider latitude during the discovery process, because of the very nature of the action; in such a case the defendant is usually 'the sole possessor of the actual knowledge of . . . fraud.' Harris v. M S Toyota, Inc., 575 So.2d 74, 79 (Ala. 1991) (quoting L.W. Johnson [Assocs.,] Inc. v. Rivers Constr. Co., 532 So.2d 618, 623 (Ala. 1988)). Last, difficulty in producing such information because records containing it may not be kept in the ordinary course of Bondy Ford's business is neither an excuse for failure to produce nor a justification for prohibiting its discovery through ordinary interrogatory requests. Campbell, supra, at 124.
 "Accordingly, Mr. Rowland should have been allowed the full breadth of his discovery request subject to the 10-year limitation."
669 So.2d at 127-28.
Unlike Rowland, the present action is not based on allegations of fraud. However, like the fraud claim in Rowland, intent is an element of the Finkbohners' bad faith claim. SeeThomas v. Principal Financial Group, 566 So.2d 735 (Ala. 1990). For this reason, and because bad faith, like fraud, is particularly difficult to prove, Thomas, at 742-43, any bad faith actions filed against Principal Mutual since 1992 would be discoverable under the rationale of Rowland. Therefore, based on Rowland, we conclude that the trial court abused its discretion in denying the Finkbohners' motion to compel discovery of any previous bad faith actions filed against Principal Mutual.
We note, however, that the Finkbohners seek to discover not only previous bad faith actions filed against Principal Mutual, but also all "bad faith claims" that have not resulted in the filing of an action. The Finkbohners' discovery request does not define or delineate exactly what constitutes a "bad faith claim." The term "bad faith" is a legal term corresponding to certain wrongful conduct on the part of an insurer in denying a claim for benefits. For this reason, we conclude that it would be unduly burdensome on Principal Mutual for it to have to sift through possibly hundreds, if not thousands, of letters or other items of correspondence complaining of or challenging its denial of particular claims and to have to decide whether any one of the complainants was charging it with a "bad faith" denial of the claim. We also question how many complaints or "claims" not resulting in legal action would be "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Ala.R.Civ.P. For these reasons, we conclude that the trial court did not abuse its discretion in denying the Finkbohners' motion to compel the discovery of previous "bad faith claims."
With respect to their second discovery request (for information concerning all claims for benefits filed in Alabama over the past five years that were denied on the ground that they were related to procedures *Page 414 
deemed cosmetic in nature), the Finkbohners argue as follows:
 "Through production of this information, the [Finkbohners] may be able to identify similarly situated insureds who had valid claims wrongfully denied by Principal Mutual, wherein the insurer misapplied its own definition as contained in the policy drafted by the insurer. In addition, this discovery may identify a pattern, practice, scheme or plan, on behalf of the insurer to wrongfully deny claims based upon its undisclosed and secret definition of 'cosmetic surgery.' "
The Finkbohners apparently seek to buttress their bad faith claim by presenting the testimony of other claimants who had claims denied based on the definition of "cosmetic surgery" contained in the policy. As we understand the Finkbohners' position, the information they seek would be relevant only if the definition of "cosmetic surgery" contained in their certificate of insurance, and not the one set out in the policy, controlled and if Principal Mutual's reliance on its policy language could form the basis for a bad faith claim, as opposed to a claim for breach of contract. In this regard, the policy provides:
 "The Company will give a certificate to each insured Member. The certificates will be evidence of insurance and will describe the basic features of the benefit plan. They will not be considered a part of this policy."
Citing Ala. Code 1975, § 27-14-19, and Brown Machine Works Supply Co. v. Insurance Co. of North America, 659 So.2d 51
(Ala. 1995), the Finkbohners contend that Principal Mutual is estopped from denying coverage under the policy by virtue of the discrepancy between the definition of "cosmetic surgery" contained in the policy and the one contained in the certificate. According to the Finkbohners, they can base a bad faith claim on this estoppel theory. Although we stated inBrown, at 58, that "when an insurer has not complied with §27-14-19 and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid coverage exclusion," we did not address whether a bad faith claim could be maintained against an insurer that relied on the language of its policy, as opposed to conflicting language contained in a certificate provided to the insured. In the absence of fraud, the existence of an otherwise valid coverage exclusion in a policy would arguably provide the insurer with a legitimate or debatable reason for denying a claim. However, the Finkbohners do not allege fraud and the trial court has not ruled on this question. In fact, we are not even certain that this estoppel argument has even been made to the trial court. With the case in this posture, and without the benefit of having this issue fully briefed, we are not inclined to say that the information sought by the Finkbohners is relevant to their bad faith claim; therefore, we cannot hold that the trial court abused its discretion in denying their motion to compel its disclosure.
PETITION GRANTED IN PART AND DENIED IN PART.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, and COOK, JJ., concur.
INGRAM and BUTTS, JJ., concur in part and dissent in part.