National Security Insurance Company, Inc., is a defendant in an action pending in the Houston Circuit Court. It petitions for a writ of mandamus directing the circuit court to vacate its orders requiring certain discovery. We deny the petition. *Page 463 
 I. Facts
James Boutwell sued National Security, alleging fraud, suppression, breach of contract and negligent, wanton, or reckless acts in connection with the sale of a life-insurance policy to his mother. Boutwell later amended the complaint to add counts alleging conspiracy and a violation of § 27-12-6, Ala. Code 1975, which prohibits a person from "misrepresenting or making misleading incomplete comparisons as to the terms, conditions or benefits contained in any policy for the purpose of inducing, or attempting or tending to induce, the policyholder to lapse, forfeit, surrender, retain, exchange or convert any insurance policy."
Boutwell's mother, Velma Boutwell ("Mrs. Boutwell"), died in March 1997. Boutwell alleged that she had owned a life insurance policy issued by National Security. Boutwell, named as the beneficiary, claimed that National Security's agent Robert Tice had represented to Mrs. Boutwell that the policy provided for payment of the face amount of the policy upon her death. Boutwell alleged that, because of these alleged representations, he had made no other provisions for his mother's burial expenses.
Before October 1995, Mrs. Boutwell had owned several National Security life-insurance policies, with face values totaling $3,000.[1] According to Boutwell, National Security had allowed his mother's life-insurance policies to lapse.
Boutwell claims that in October 1995 Robert Tice forged Mrs. Boutwell's name onto an application for a guaranteed-issue or "preferred" policy, on which the full face amount would be payable only after the policy had been in effect two years. When Mrs. Boutwell died, on March 19, 1997, the guaranteed-issue policy had not been in effect for two years. Thus, National Security informed Boutwell that he was entitled only to a refund of the premiums his mother had paid, plus 5% annual interest on the amounts paid.
In Boutwell's second request for production of documents, he requested:
 "3. A list of all persons who own a similar policy issued by Defendant National Security Insurance Company.
 "4. Copies of any legal complaints filed in any lawsuit against this Defendant that have been filed within the last five (5) years that relate to a denial of benefits to the beneficiary of the policy because the insured died within two years of the date of the issuance of the policy.
 "5. A copy of any and all documents which represent the list or schedule of individuals who are current policyholders of National Security Insurance Company policies who have purchased either additional or replacement insurance with a new National Security policy of insurance.
 "10. A copy of all complaints received by National Security against the company or any agent within the past five (5) years concerning fraud, deceit, misrepresentation, suppression, and/or violation of an insurance regulation or insurance statute of the Code of Alabama."
Boutwell moved to compel discovery. In support of his motion to compel, he agreed to limit the requests for policyholder names to the following:
 "[A] list of all persons, their names, telephone numbers, and addresses, in the State of Alabama who have purchased a policy of insurance similar to that issued to Velma Boutwell by Defendant on October 17, 1995, within the last five years." *Page 464 
National Security moved for a protective order. Following a hearing, the trial judge entered the following order:
 "In regard to the Motions to Compel and for Protective Order the Court orders Defendant National Security Insurance Co. to provide Plaintiff a list of policyholders and addresses of `preferred policies' i.e., those that do not pay benefits upon death within 2 years of issue; and of those policies issued pursuant to a lapsed policy issued by National Security: within the State of Alabama during the past five years."
The parties seem to understand the phrase "those policies issued pursuant to a lapsed policy issued by National Security" to refer to new policies issued after a policyholder had allowed an earlier policy issued by National Security to lapse. The parties further seem to understand the phrase "within the State of Alabama during the past five years" to be a time and area limitation, referring to both lists of policyholders.
The trial court issued a second order directing National Security to "provide [p]laintiff a list of all lawsuits filed in the State of Alabama within five years for fraud, deceit, misrepresentation, suppression and/or violations of insurance regulations or statutes naming the county where filed." National Security then filed this petition for the writ of mandamus.
 II. Analysis
Discovery requests are governed by Rule 26, Ala.R.Civ.P. However, "[d]iscovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. Colonial Bank, 612 So.2d 1146, 1146
(Ala. 1992) (citations omitted); see also Ex parte Hicks,727 So.2d 23, 33 (Maddox, J., dissenting). The trial court's discretion is not unlimited:
 "[T]he standard this Court will apply in reviewing [the trial judge's] actions on a petition for a writ of mandamus is whether there has been a clear showing that the trial court abused its discretion. Thus, a writ of mandamus directing the trial judge to set aside his ruling on a discovery matter will issue only where it is clear that the trial judge has abused his discretion."
Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991).
A petition for the writ of mandamus is the proper method for presenting the question whether a trial judge has abused his discretion in ordering discovery. Ex parte Allstate Ins. Co.,401 So.2d 749, 751 (Ala. 1981). The writ of mandamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Horton,711 So.2d 979, 983 (Ala. 1998) (citing Ex parte United Serv.Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab, Inc.,586 So.2d 889 (Ala. 1991) (citing Martin v. Loeb Co.,349 So.2d 9 (Ala. 1977)). Thus, the writ of mandamus will not issue to direct the trial court to change its discovery order unless this Court determines, "based on all the facts that were before the trial court, that the trial court clearly abused its discretion."Ex parte Horton, 711 So.2d at 983.
An insurance company's lists of policyholders are confidential, proprietary information to which a litigant has no right except through court-ordered discovery. Ex parte Stephens,676 So.2d 1307, 1316 (Ala. 1996) (Houston, J., dissenting); Exparte Mobile Fixture Equip. Co., 630 So.2d 358 (Ala. 1993); Exparte McTier, 414 So.2d 460 (Ala. 1982).
"The first step in determining whether the court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the *Page 465 
claim." Ex parte Rowland, 669 So.2d 125, 127
(Ala. 1995). Because Boutwell alleged fraud, he "is accorded a considerably wider latitude in the discovery process so that he will be able to meet the heavy burden of proof placed [on one alleging fraud]."Ex parte Clarke, 582 So.2d at 1068. "`[E]vidence of prior similar acts is admissible to show fraud, scheme, motive, or intent.'" 582 So.2d at 1068 (quoting Pugh v. Southern Life Health Ins. Co.,544 So.2d 143, 145 (Ala. 1988)). Thus, "[w]hen the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome." Ex parteHorton, 711 So.2d at 983.
 A. Policyholder Order
The trial court did not abuse its discretion in ordering National Security to produce "a list of policyholders and addresses of `preferred policies' i.e., those that do not pay benefits upon death within 2 years of issue; and of those policies issued pursuant to a lapsed policy issued by National Security: within the State of Alabama during the past five years."
We addressed a similar issue in Ex parte First National Bankof Pulaski, 730 So.2d 1160 (Ala. 1999). In that case, involving claims of fraud in regard to the sale of credit-life insurance, we held that the trial court did not clearly abuse its discretion in requiring the defendant Bank to produce the names and addresses of all Alabama residents who had borrowed money from the Bank through a specific loan officer in 1994 and 1995.
In Ex parte Union Security Life Insurance Co., 723 So.2d 34
(Ala. 1998), the plaintiff sued Union Security when it denied a claim on a credit-life insurance policy purchased in connection with the purchase of a truck; the plaintiff alleged fraud, breach of contract, negligence, wantonness, and bad-faith refusal to pay insurance benefits. We held that the trial court did not clearly abuse its discretion in ordering the defendant insurance company to produce all applications for credit-life insurance received from Alabama residents during a five-year period. Moreover, because the complaint asked for punitive damages, we held that the plaintiff had shown a need for the discovery she requested, and we stated that the trial court's order reflected the need:
 "`[W]e believe that the United States Supreme Court's opinion in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), increased the necessity for a plaintiff alleging fraud and seeking punitive damages to seek pretrial discovery of similar alleged acts of misconduct by the defendant. The United States Supreme Court stated: "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." 517 U.S. at 575, 116 S.Ct. at 1599[, 134 L.Ed.2d at 826].'"
Ex parte Union Security, 723 So.2d at 39 (quoting Ex parteHorton, 711 So.2d at 983-84).
Boutwell alleges fraud and requests punitive damages. Thus, he is allowed broader discovery than would be allowed generally in other cases. However, his discovery is not unlimited. Our decisions in Ex parte First National Bank of Pulaski and Ex parteUnion Security suggest that the time and geographical limitations imposed by the trial court are important in closely tailoring the discovery to Boutwell's claims. Although the trial court's order could have been clearer, we conclude that the court intended for the phrase "within the State of Alabama during the past five years" to be a limitation applying to both the request for a list of holders of preferred policies and the request for a list of holders of policies issued pursuant to a lapsed policy. Interpreted thus, the discovery order is closely tailored to Boutwell's fraud allegations and is not *Page 466 
oppressive or overly burdensome for National Security. Accordingly, we do not find that the trial court clearly abused its discretion.
 B. List of Similar Lawsuits
The trial court's second order directed National Security to "provide [p]laintiff a list of all lawsuits filed in the State of Alabama within five years for fraud, deceit, misrepresentation, suppression and/or violations of insurance regulations or statutes naming the county where filed." The discovery of past fraud actions, subject to the five-year limitation, may lead to the discovery of admissible evidence tending to suggest a pattern or practice of intentional wrongful conduct on the part of National Security's agents. As we have stated, "some earlier fraud actions need not relate to the specific focus of the fraud [the plaintiff] alleges . . . for the discovery regarding earlier actions to be relevant to [the plaintiff's] action." Ex parte Rowland, 669 So.2d at 127. Compare Ex parte Finkbohner, 682 So.2d 409, 413 (Ala. 1996) (implying that a plaintiff's request for a list of fraud "claims" that have not resulted in the filing of actions would be unduly burdensome on the defendant); and Ex parte Union Security, 723 So.2d at 38-39 (consumer complaints filed with the company, even if the complaints do not result in legal actions, "can lead to evidence of representations similar to those made to the [plaintiffs]" and are thus discoverable). The trial court's order requiring National Security to produce a list of lawsuits is more restrictive than the order to produce consumer complaints andlawsuits upheld in Ex parte Union Security; it was not an abuse of discretion.
 III. Conclusion
National Security has not shown that the trial court clearly abused its discretion in issuing the discovery order. Therefore, the petition for the writ of mandamus is denied.
 WRIT DENIED.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Johnstone, and England, JJ., concur.
[1] The complaint and the amended complaint stated that before October 1995 Mrs. Boutwell had paid on one insurance policy that was to pay the beneficiary $3,000 upon Mrs. Boutwell's death. However, Doug Martin, Jr., a National Security representative, testified at his deposition that Mrs. Boutwell had paid on two or three National Security life-insurance policies with combined face values of $3,000.