727 So.2d 23 (1998)
Ex parte Eddie HICKS.
(Re Eddie Hicks v. Headland & Abbeville Mortuaries, Inc., et al.)
1961835.
Supreme Court of Alabama.
September 25, 1998.
Opinion Overruling Rehearing January 8, 1999.
*24 Thomas P. Willingham of Davenport & Willingham, Birmingham; and William C. Maddox of Hall & Smith, Dothan, for petitioner.
Herman Cobb and Todd Derrick of Cobb & Shealy, P.A., Dothan, for respondent Headland & Abbeville Mortuaries, Inc.
ALMON, Justice.
Eddie Hicks, the plaintiff in an action pending in the Henry County Circuit Court, petitions this Court for a writ of mandamus directing the circuit court (1) to order the defendants, Headland & Abbeville Mortuaries, Inc., and its owners, John Robert Holman and W. Russell Holman, to comply with Hicks's discovery requests, and (2) to transfer the action back to the Houston County Circuit Court.
Hicks's mother, Maude L. Hicks, died on July 3, 1995, at Hicks's home in Houston County. John Robert Holman came to Hicks's home to remove the body of Maude Hicks. Hicks stated in his deposition testimony:
"Mr. John Robert Holman asked me to come and sit down and talk with him a little. We went into the dining room and sat down at the dining room table and talked while his associates removed my mother's body from the home.
"There were arrangements that had to be made that night. I had to sign a form so that he could embalm the body. He said he wanted to go ahead and do it that night.
". . . .
"During this time I mentioned to Mr. John Robert Holman that my mother had a burial policy with Liberty National. And he asked me for what amount and I told him I believed it to be $500. During the conversation he said that I believe $500 was the most he had ever seen on one of *25 those policies, that most of them were $300, $400, some maybe even less.
"I told him that my mother had explained to me that the policy would take care of her funeral, her expenses, casket, pretty much everything.
"He told me that no, what those did, they would only pay the face value, whatever it was.
"I asked if he needed to see the policy, because I did not have it with me. And he said, no, I could just bring it later and they would give me credit for the face value of the policy."
Holman told Hicks to come to the funeral home early the next day to make the arrangements for his mother's funeral.
Hicks testified that the next day, at the defendants' place of business in Henry County, W. Russell Holman told him that his mother's burial policy would pay benefits in the face amount of the policy and that Hicks should bring the policy with him when he came to pay the funeral bill, in order to receive a credit. Hicks stated that neither John Robert Holman nor W. Russell Holman informed him that a decision to purchase services or merchandise not listed in the burial policy would void the policy insofar as providing a "paid up" funeral for his mother and would cause a loss of the benefits specifically provided by the policy, so that Hicks would be required to pay for the entire funeral and simply receive a credit for the face value of the policy.
On July 4, 1995, while Hicks was at Headland & Abbeville Mortuaries funeral home in Henry County, he signed a contract for the defendants' services. His mother's funeral was conducted on July 6, 1995. On July 10, 1995, Hicks found his mother's Family Reserve Insurance Company burial insurance policy. Family Reserve burial policies are serviced by Liberty National Life Insurance Company. In protracted federal litigation, Liberty National's obligations under Family Reserve policies, Liberty National policies, and Brown-Service policies were rewritten or, as one court put it, "clarified or reformed." Battle v. Liberty Nat'l Life Ins. Co., 770 F.Supp. 1499, 1506 (N.D.Ala.1991), aff'd, 974 F.2d 1279 (11th Cir.1992), cert. denied, 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 692 (1993). For a full understanding of the federal courts' reform in the Battle litigation of the policies, such as Mrs. Hicks's policy, issued or assumed by Liberty National, see Battle v. Liberty Nat'l Life Ins. Co., 493 F.2d 39 (5th Cir.1974), cert. denied, 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975); Battle v. Liberty Nat'l Life Ins. Co., 660 F.Supp. 1449 (N.D.Ala.1987), aff'd, 877 F.2d 877 (11th Cir.1989); and Taylor v. Liberty Nat'l Life Ins. Co., 462 So.2d 907 (Ala. 1984).
Headland & Abbeville Mortuaries is an "authorized" funeral home, pursuant to a contract with Brown-Service Funeral Homes, Inc. By virtue of this contract, Headland & Abbeville Mortuaries is obligated to service burial insurance policies issued or assumed by Liberty National, including Family Reserve and Brown-Service policies. Pursuant to the contract, Headland & Abbeville Mortuaries furnishes the merchandise set out in the burial insurance policies and, if the customer selects "other merchandise ... and an oversale is thus made," Headland & Abbeville Mortuaries will allow the value of the policy to be applied as a credit to the total price of the funeral and merchandise. Under the terms of the 1978 consent judgment in Battle,[1] an "oversale" occurs when the customer making the funeral arrangements orders services and merchandise additional to, or other than, those listed in the policy.
The defendants conduct approximately 100 funerals each year for which Liberty National, Family Reserve, and Brown-Service burial policies are submitted in payment for their services. The defendants stated that they are familiar with the provisions of Liberty National, Family Reserve, and Brown-Service policies, that all of these policies are serviced by Liberty National, and that the defendants' furnishing of services and merchandise under any of these policies is controlled by the contract between the defendants and Brown-Service Funeral Homes, Inc. As the defendants acknowledge, an "oversale" *26 can occur pursuant to the provisions of the Liberty National, Family Reserve, and Brown-Service policies. They contend that they explain to every customer the terms of the burial policy involved, including the possibility and result of an oversale.
Hicks points out that the effect of an oversale is not explained in the Liberty National, Family Reserve, or Brown-Service burial policies.[2] Therefore, says Hicks, an insured's survivor knows of the result of an oversale only if he or she happens to know about the decision in the Battle litigation or if an agent, officer, or employee of the funeral home providing a burial pursuant to the policy tells the customer about the changes wrought by that federal court decision.
Hicks paid the bill for his mother's funeral and received a $300 credit[3] for her burial insurance policy. Hicks then brought an action against the defendants in the Houston County Circuit Court, alleging fraud in the sale of funeral services. On February 6, 1997, on motion of the defendants, the cause was transferred to the Henry County Circuit Court. On February 20, Hicks filed a motion to vacate the transfer. While that motion to vacate was pending, the parties continued with discovery that had begun in Houston County. On April 29, 1997, the Henry County Circuit Court ruled on Hicks's pending discovery motion by ordering the defendants to produce the names and addresses of their customers who had submitted Liberty National or Family Reserve burial insurance policies for payment in the past five years and to respond to two interrogatories. The trial court also denied Hicks's motion to vacate the transfer to the Henry County Circuit Court.
After receiving the trial court's order, Hicks's attorney wrote to the defendants' attorney:
"I am in receipt of Judge Little's April 29, 1997, order on the plaintiffs motion to compel. The judge has granted the plaintiffs interrogatories insofar as they relate to production of the information regarding clients of the defendants who submitted burial policies for servicing. In his order, he has directed your clients to produce names and addresses for `customers who have submitted to the defendants burial insurance policies with Liberty National Life Insurance Company and/or Family Reserve Insurance Company for the last five years.' Although not specifically stated in his order, this would encompass Brown-Service policyholders, since those policies would have been serviced by Liberty National. Please let me know whether or not you will agree to this interpretation of Judge Little's order so that we don't have to bring this matter up before him again.
"In that regard, Judge Little apparently did not rule on the plaintiffs request for production, specifically, requests 3, 4, 5 and 6. Those discovery requests deal specifically with documents that would have been generated from sales to Liberty National burial policyholders. These documents would include copies of any policies submitted, sales documents, invoices, and documentation that would show whether or not an `oversale' was created. Apparently, Judge Little did not rule on the request for production; however, I am sure that you will agree that these documents are relevant in light of his Order requiring your client to produce the customer list. Please let me know whether or not you will agree to the production of the documents requested in plaintiffs requests ... 3, 4, 5 and 6 insofar as [they] pertain to customers of Headland & Abbeville Mortuaries who submitted Liberty National policies in the last five years."
In response to this letter, the defendants filed a motion to clarify and amend the April 29, 1997, order and asked the trial court to *27 address "appropriate limitations" on discovery, pursuant to Ex parte Compass Bank, 686 So.2d 1135 (Ala.1996).
On May 16, 1997, the trial court issued an amended order (1) directing the defendants to produce a list of customers who, in the past five years, had submitted as payment for the defendants' services Family Reserve burial policies with a face value of $300; (2) limiting Hicks's contact with the defendants' customers to a letter that must first be reviewed by the defendants and approved by the court; (3) ordering the defendants to produce the information requested by Hicks's interrogatories 24 and 25, for the preceding 5 years;[4] and (4) denying Hicks's motion to vacate the order of transfer. The granting of this relief had the effect of denying the requested discovery as to all other policies issued or serviced by Liberty National and as to the supporting documents showing oversales even regarding Family Reserve policies.
On June 4, 1997, Hicks filed a motion to vacate the amended order. The defendants assert that, on June 11, 1997, they complied with the mandate of the trial court's amended order by producing the names of 50 persons who, in the past 5 years, had paid for the defendants' funeral services and who had presented $300 Family Reserve burial policies.
In response to Hicks's contention that he had not been given the opportunity to be heard before the trial court entered its amended order, the trial court conducted a hearing on June 16, 1997, to consider Hick's pending motion to vacate the amended order of May 16, 1997. According to the defendants' brief filed here:
"At that hearing certain compromises were reached on the issue of discovery. The Defendants agreed to produce certain documents related to the purchase of the funeral services as they related to individuals who had $300 Family Reserve policies, individuals whose names the Defendants had already produced.
"The court instructed the attorneys to draft a new order reflecting the compromise that was reached with respect to the production of documents.... The Plaintiffs attorney indicated that he would provide a draft order, but he never did. Instead, he filed a Petition for mandamus with this Court."
(Emphasis added.)
Hicks says, however, that his attorney notified the trial court that a proposed order would not be submitted and that the trial court could enter an order denying Hicks's motion to vacate. The case action summary sheet shows that on June 27, 1997, the trial court denied Hicks's motion to vacate the amended order of May 16.

I.

A. Matters Discoverable
The stated purpose of Hicks's discovery requests for the defendants' customer lists and related sales documents was to prove fraudulent intent and a pattern and practice of fraudulent conduct in the defendants' failing to disclose to their customers the effect of an oversale in connection with the presentation of a Liberty National, Family Reserve, or Brown-Service policy as payment for the defendants' services.
"A mandamus petition is a proper method for determining whether a trial judge has committed an abuse of discretion in limiting discovery. Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala.1981). The Alabama Rules of Civil Procedure were intended to allow for very broad and liberal discovery, within reason. Trial judges have discretion to control discovery and to prevent abuse of the discovery process by the parties. However, arbitrary limits placed on discovery are not within the discretion of the trial judge. The rules envision full discovery, which has the effect of saving time, effort, and money, in an effort to achieve substantial justice. Campbell v. Regal Typewriter Co., 341 *28 So.2d 120, 123-24 (Ala.1976) (citations omitted); see Rule 26(b)(1), Ala. R. Civ. P.
"To be entitled to a writ of mandamus compelling a trial judge to permit full discovery, the petitioner must demonstrate that the circuit court clearly abused its discretion. Ex parte Clarke, 582 So.2d 1064, 1067 (Ala.1991). The first step in determining whether the court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the claim.... Where a plaintiff alleges fraud, discovery must necessarily be broader than it would be in other cases, `in order to meet the heavy burden imposed on one alleging fraud.' Id."
Ex parte Rowland, 669 So.2d 125, 127 (Ala. 1995) (emphasis added). See also Ex parte Howell, 704 So.2d 479 (Ala.1997); Ex parte Pate, 678 So.2d 762 (Ala.1996); Ex parte Stephens, 676 So.2d 1307 (Ala.1996); and Ex parte Clarke, 582 So.2d 1064, 1067 (Ala.1991).
In Rowland, the plaintiff sued an automobile dealership and its agent for fraud and breach of contract, alleging that the defendants had fraudulently induced the plaintiff to purchase an automobile by misrepresenting the size of the vehicle's engine. The plaintiff sought to discover the identity of plaintiffs in past fraud actions against the dealership, to develop evidence of a pattern and practice of wrongful conduct by the defendants. In response to the plaintiffs motion to compel and the defendants' objection to the plaintiffs discovery requests, the trial court ordered the defendants to provide the names of plaintiffs who had sued the defendants in the past 10 years for fraud or misrepresentation "specifically in regards to misrepresenting the engine size of a vehicle." Ex parte Rowland, 669 So.2d at 126.
This Court granted the plaintiffs petition for a writ of mandamus and directed the trial court to set aside its order restricting the plaintiffs access to information regarding fraud cases brought against the dealership. The Court held:
"Whether any prior acts of fraud concern engine size, mileage, damage, or other facts is immaterial. What is consequential is that Rowland seeks to learn of prior cases brought against [the dealership] in which plaintiffs have alleged fraud, the most likely occurrence of which would be fraud in the inducement concerning the purchase of vehicles. Thus, some earlier fraud actions need not relate to the specific focus of the fraud Rowland alleges, a fraud relating to engine size, for the discovery regarding earlier actions to be relevant to Rowland's action. Discovery of similarly situated plaintiffs could very well lead to admissible evidence of scheme, motive, or intent on the part of [the dealership]. Likewise, Rowland's discovery request is not overly broad, because (1) there is no indication that it would require the defendants to disclose frauds not analogous to that alleged in Rowland's claim, for example, frauds not concerning the purchase of vehicles, and (2) compliance with it should not be overly burdensome."
Id., 669 So.2d at 127.
Similarly, in this case the circuit court should not have limited Hicks's discovery to the list of "customers who have submitted to the Defendants $300 Family Reserve burial policies in the past five years." Hicks's "particularized need for discovery" relates to his claim that the defendants engage in a pattern and practice of misrepresenting or intentionally suppressing the effect of an oversale on the burial insurance policies issued by Liberty National, Family Reserve, and Brown-Service. No explanation of an oversale is contained in the burial policy, so if the defendants do not explain the effect of an oversale, the insured's survivor will make an uninformed decision that can drastically reduce the value of the policy.
It is clear that the defendants understand this fact. During the deposition of John Robert Holman, Hicks's lawyer asked if he knew what the term "oversale" meant. Holman replied:
"`Oversale' ... means that when a Brown-Service, Luquire, Family Reserve, or any other policy which is being handled by Liberty National or Brown-Service is presented to me, if the family orders additional services, or other services, or any other merchandise other than what is furnished by the policy, the policy then is credited against the funeral bill."
*29 The defendants stated that the provisions of the Liberty National, Family Reserve, and Brown-Service policies were all interpreted according to the defendants' contract with Brown-Service Funeral Homes, Inc., and that all of these policies contained similar provisions that were construed under Battle so that an oversale would occur if the customer varied from the exact funeral provided by the policy.
Just as the limitation in Rowland to fraud allegations regarding engine size was an arbitrary limitation on discovery, the limitation of discovery in this case only to the list of customers who had submitted Family Reserve policies was an undue and inappropriate limitation. There is no reason to believe that the fraud alleged has any specificity to Family Reserve policies; the same misrepresentation or suppression could as well be made in regard to the other policies serviced by Liberty National and revised by Battle. In fact, when the defendants allegedly made the misrepresentations or suppressions at issue, Hicks had said, according to his testimony, that his mother had a Liberty National policy, not that she had a Family Reserve policy. When the defendants supplied their customer list for $300 Family Reserve policies submitted over a five-year period, the list they submitted contained 50 names. The defendants testified, however, that they service at least 100 funerals each year for which Liberty National, Family Reserve, and Brown-Service policies are submitted as payment. A list of 50 names relating to a 5-year period, compared to a list of 500 or more customers during the same 5-year period, is one indication of how the amended order improperly limits the plaintiffs right to discovery.
Nor is there any indication that compliance with the requested discovery would be unduly burdensome or expensive. In deposition, the defendants stated that records of their transactions of providing services and merchandise are kept in the regular course of their business. Five hundred records dating from a 5-year period are dramatically fewer than the 21,246 customers and 35,000 transactions at issue in Ex parte Compass Bank, 686 So.2d 1135 (Ala.1996). Moreover, Hicks seeks discovery that is narrowly directed toward the alleged fraud, whereas the records sought in Compass Bank applied to a variety of types of transactions that were not related to the plaintiffs' annuities. Thus, the defendants' reliance on Compass Bank as support for the circuit court's amended order is misplaced.
The argument that the plaintiffs agreed at the June 16 hearing to a compromise is not well taken. Hicks asserts that, at the hearing, the circuit court orally denied the motion to vacate the order but agreed to require production of documents regarding the treatment of the 50 Family Reserve policies. The defendants' rendition of those proceedings, as quoted above, supports this conclusion, not a conclusion that the parties agreed in general to a compromise. Thus, it is immaterial that Hicks's attorney, rather than submitting a draft order whereby he was still limited to discovery regarding only the Family Reserve policyholders, filed this petition for the writ of mandamus. As we have shown, the limitation of discovery only to the defendants' customers with Family Reserve policies was unrelated to the true scope of the alleged fraudulent practice. Any decision by the circuit court to grant further discovery that was still limited to the Family Reserve policyholders did not correct the fundamental error in the limitation on discovery.

B. Manner of Discovery
The amended order is also due to be set aside to the extent that it limits Hicks's contact with the defendants' customers to a letter reviewed by the defendants and approved by the court.
"It is also apparent that the limitation the trial court placed on the method by which the Howells' attorneys could contact the policyholders, i.e., only by court-approved, and defense counsel reviewed, letters and postcards, created an awkward procedure that could prevent the acquisition of information. While contacts by letter may certainly be a useful option for the Howells' attorneys in their attempts to gather evidence, it should not be mandated by the trial court as the exclusive method. As this Court noted in Ex parte Stephens, *30 [infra], it will be entirely up to the policy-holders whether to consent to speak to the attorneys. The Howells' attorneys have the right to use any legal method to gather evidence in this case, including, but not limited to, letters and postcards."
Ex parte Howell, 704 So.2d 479, 482 (Ala. 1997) (emphasis added), citing Ex parte Stephens, 676 So.2d 1307 (Ala.1996).
The defendants also contend that, because of the sensitive nature of the services and merchandise they provide, they are entitled to limit Hicks's discovery efforts and that the aforementioned cases do not apply to the facts of this case. However, as this Court noted in Ex parte Stephens, the policyholders have the right to refuse to respond to Hicks's inquiries. Further, "As noted in Ex parte Stephens, it cannot and should not be presumed that an officer of the court will act in an unethical manner." Howell, 704 So.2d at 482. Indeed, Hicks's attorney has acknowledged the sensitive nature of his requests and has indicated that discovery will be conducted accordingly.
The trial court improperly placed arbitrary limits on Hicks's discovery and prevented Hicks from conducting meaningful discovery. Hicks is entitled to a writ of mandamus directing the trial court to vacate its order with regard to discovery and to enter an order that allows "full discovery, which has the effect of saving time, effort, and money, in an effort to achieve substantial justice." Ex parte Rowland, 669 So.2d at 127, quoting Campbell v. Regal Typewriter Co., 341 So.2d 120, 123-24 (Ala.1976); Rule 26(b)(1), Ala. R. Civ. P.

II.
Hicks also asks this Court to order the Circuit Court of Henry County to transfer this case from Henry County back to Houston County.
Section 6-3-7, Ala.Code 1975, provides that "all actions against a domestic corporation for personal injuries must be commenced in the county where the injury occurred." The defendants contend that the injury alleged by Hicks occurred, if at all, in Henry County because, "`[i]n personal injury actions where the defendant's wrongful act or omission causes the plaintiff to suffer ... nonbodily injuries, the injury occurs in the county where the defendant's wrongful act or omission occurred.'" Ex parte Macon County Greyhound Park, Inc., 634 So.2d 997, 998-99 (Ala.1993) (quoting Ex parte Graham, 634 So.2d 994, 997 (Ala.1993)). See also Ex parte Graham, 634 So.2d 994 (Ala.1993).
However, this assertion depends upon the defendants' argument that no portion of the fraud occurred in Houston County. Hicks has given deposition testimony that could support a finding that, at Hicks's Houston County home on the night of his mother's death, John Robert Holman fraudulently misrepresented or suppressed the truth regarding the oversale treatment of insurance policies serviced by Liberty National. Hicks testified that he told Holman that night that his mother had explained that her "Liberty National" policy would cover "pretty much everything." According to Hicks, Holman replied that it would pay only its face value and said "no" when Hicks asked if he needed to see the policy. Thus, Hicks has submitted substantial evidence that the alleged fraudulent conduct occurred, or at least began, in Houston County.
Furthermore, § 6-3-7 provides that person venue in personal injury actions against domestic corporations shall be "in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiffs residence." As can be seen from John Robert Holman's conduct in retrieving Mrs. Hicks's body and from the defendants' doing business with Hicks in Houston County, the defendants do business by agent in Houston County.
The defendants argue that this mandamus petition is untimely because it was not filed until "[o]ne hundred sixty-seven days after this cause was transferred to Henry County and ninety-three days after the court refused to vacate the transfer." The date of the transfer does not determine the timeliness of the mandamus petition, because, two weeks after the transfer was ordered and six days after the case was received in Henry County, Hicks filed in the Henry County Circuit Court a motion to vacate the transfer. *31 Even the 93-day calculation is not an appropriate measure of the timeliness of the mandamus petition, because the April 29 order ruled both on discovery matters and on the motion to vacate the transfer. We have no materials showing the proceedings in the Houston County Circuit Court before the transfer, but it is clear that this discovery dispute began before the transfer. Through the defendants' prompting, the April 29 order was amended on May 16, and further proceedings on the matters therein were held in June. The motion to vacate the May 16 order was denied on June 27, and this mandamus petition was filed on August 4. Hicks should not be penalized for seeing the discovery dispute through to a final ruling before filing his mandamus petition, when the circuit court was ruling on the discovery dispute at the same time it was ruling on the motion to vacate the transfer.
The defendants also take the position that their motion to transfer additionally relied upon § 6-3-21.1, Ala.Code 1975, which allows a transfer of an action for the convenience of the parties and witnesses or in the interest of justice. The defendants say that Henry County is the most convenient forum for this action. In support of their argument regarding the application of § 6-3-21.1, the defendants assert that all the events that gave rise to Hicks's complaint occurred in Henry County and that it would be a hardship on the defendants, owners and operators of two funeral homes in Henry County, to be absent from their businesses for a trial in Houston County.
However, Henry and Houston Counties are adjoining counties within the same judicial circuit, and the distance from one county seat, Abbeville, to the other, Dothan, is scarcely 20 miles. Thus, there is no showing of a significant inconvenience in trying the case in the plaintiffs home county of Houston, where at least part of the alleged fraudulent conduct would have occurred. "The transferee forum must be significantly more convenient than the forum in which the action was brought, as chosen by the plaintiff, to justify a transfer." Ex parte Pearson Mgmt. Co., 667 So.2d 48, 50 (Ala.1995). The Henry County Circuit Court did not state that it was basing its denial of the motion to vacate the transfer on § 6-3-21.1, and we hold that the circumstances would not have supported a transfer based on that Code section.

III.
In his reply brief, Hicks purports to file a second petition for a writ of mandamus regarding a proposed advertisement seeking information from "witnesses who may have had experiences similar to those of our client." After receiving an informal opinion from the office of general counsel of the Alabama State Bar stating that the proposed advertisement was "permissible within the bounds of the Rules of Professional Conduct," Hicks's attorney notified the defendants' attorney that he proposed to publish the advertisement in local newspapers. The defendants sought, and the circuit court immediately granted, a protective order restraining Hicks and his attorneys from placing any advertisements for the purpose of locating witnesses. The "second petition for writ of mandamus" seeks to have that protective order set aside.
This purported mandamus petition was simply included in Hicks's reply brief and was not filed pursuant to Rule 21(a), Ala. R.App. P. We dismiss the "second petition for writ of mandamus," without prejudice. In light of our decision on the properly filed mandamus petition, Hicks may further consider whether to pursue publishing the advertisement and, if Hicks elects to go forward, further proceedings may be had on whether it should be restrained or allowed.
For the reasons stated, the petition for the writ of mandamus is granted. The improperly filed "second petition" is dismissed.
WRIT GRANTED; SECOND PETITION DISMISSED.
KENNEDY and COOK, JJ., concur.
HOUSTON, J., concurs in Parts II and III and concurs in the result as to Part I, with opinion.
LYONS, J., concurs in Parts II and III and concurs in the result in Part I.
*32 SEE, J., concurs in Part III, concurs in the result in Part II, and dissents from Part I, with opinion.
MADDOX, J., concurs in Part III and dissents from Parts I and II, with opinion.
HOOPER, C.J., dissents.
HOUSTON, Justice (concurring as to Parts II and III and concurring in the result as to Part I).
I do not believe the trial court placed arbitrary limits on Hicks's discovery or prevented Hicks from conducting meaningful discovery. I would dissent if it were not for the Court's opinions in Ex parte Stephens, 676 So.2d 1307 (Ala.1996), and Ex parte Howell, 704 So.2d 479 (Ala.1997). I dissented in Stephens and Howell. Ex parte Clarke, 582 So.2d 1064 (Ala.1991), was a division case in which I did not participate. In Ex parte Rowland, 669 So.2d 125 (Ala.1995), I concurred in issuing a writ of mandamus to require the trial court to make the defendant disclose the names of plaintiffs and the dates their lawsuits, alleging fraud and misrepresentation against the defendant, were filed. I can easily distinguish Rowland from the case now at issue. If I were writing on a clean slate, I would vote to deny the writ and to allow the trial court's order to stand, for I am not persuaded that the trial court clearly abused its discretion. However, this Court, for over seven years, has been directing trial courts to set aside restrictions in protective orders that are similar to the restrictions in this case. Therefore, I reluctantly concur to issue the writ, and I will vote to issue such writs in the future unless four other Justices vote to let the trial courts exercise the power and discretion that I believe trial courts must have if they are to do their duty effectively. As to Parts II and III, I concur.
SEE, Justice (concurring in Part III, concurring in the result in Part II, and dissenting from Part I).
I concur in Part III of the main opinion, which dismisses the purported second mandamus petition by Eddie Hicks for failure to comply with Rule 21(a), Ala. R.App. P. I concur in the result in Part II, which requires the trial judge to transfer the case back to Houston County because, in my view, the defendants had made an insufficient showing that the initial transfer to Henry County was required by Ala.Code 1975, § 6-3-21.1.
I must respectfully dissent, however, from Part I of the main opinion, which holds that the trial court abused its discretion in limiting the plaintiffs discovery. I discern no abuse of discretion in the trial court's limiting discovery to disclosure as to those customers who have purchased the specific type of policy at issue in this case. Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala. 1992). Further, I detect no substantial harm to the plaintiff from the trial court's limiting discovery to 50 other customers instead of 500 other customers. Id. In my view, the trial court's order concerning the items discoverable and the manner of discovery appropriately balanced the interests of the plaintiff in his attempt to prove a pattern or practice of fraud and the interests of the defendants in avoiding a burdensome discovery request and avoiding a fishing expedition by the plaintiff. See, e.g., Ex parte Compass Bank, 686 So.2d 1135 (Ala.1996); Ex parte Wal-Mart Stores, Inc., 682 So.2d 65, 68 (Ala. 1996) (Hooper, C.J., dissenting). Thus, I cannot agree that the petitioner has shown a clear legal right to substantially broader discovery. Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991).
MADDOX, Justice (concurring in Part III and dissenting from Parts I and II).
The facts of this case are adequately set out in the main opinion. I write briefly to explain which portions of the main opinion I agree with and which I disagree with, and my reasons for doing so.
I concur in Part III of the main opinion, dismissing the purported "second petition for writ of mandamus," because the plaintiff did not file that petition in compliance with Rule 21(a), Ala. R.App. P.
With regard to Part I of the main opinion, which holds that the trial court abused its discretion in limiting the plaintiffs discovery, I must respectfully dissent. As this Court has held,

*33 "Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant. Smith v. Wilcox County Board of Education, 365 So.2d 659 (Ala.1978); Selby v. Money, 403 So.2d 218 (Ala.1981); Riddlesprigger v. Ervin, 519 So.2d 486, 487 (Ala.1987); Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala. 1989); Ragan v. Blazon Flexible Flyer, Inc., 590 So.2d 882 (Ala.1991); and Napier v. McDougal, 601 So.2d 446 (Ala.1992)."
Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala.1992).
The writ of mandamus is an extraordinary remedy to which a petitioner is entitled only when he or she shows that "there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform ...; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991), citing Martin v. Loeb & Co., 349 So.2d 9 (Ala.1977). I do not believe the plaintiff has shown that the trial judge abused his discretion on this issue, nor do I believe that he has shown "substantial harm." The petitioner, thus, has not shown a clear legal right to the writ of mandamus, and, therefore, I would not hold that the trial abused his discretion. I must therefore dissent from the main opinion as to this issue.
I must also respectfully dissent from Part II of the main opinion, in which it orders the trial judge to retransfer the case from Houston County to Henry County. The defendants relied, in part, upon § 6-3-21.1, Ala. Code 1975, in their motion for a change of venue and in their brief in support of that motion. Section 6-3-21.1(a) provides:
"With respect to civil actions filed in an appropriate venue, any court of general jurisdiction shall, for the convenience of parties and witnesses, or in the interest of justice, transfer any civil action or any claim in any civil action to any court of general jurisdiction in which the action might have been properly filed and the case shall proceed as though originally filed therein."
When the Legislature adopted that section, we have held, it
"`intended to promote the concept of fairness and justice and to provide trial judges with the power to transfer a case, if the trial judge, in the exercise of broad discretion, determines that, in the words of the legislation, "the interest of justice" requires it. Blair v. Container Corp. of America, 631 So.2d 919, 921 (Ala.1994); Ex parte Canady, 563 So.2d 1024, 1025 (Ala.1990).'"
Ex parte First Family Financial Services, Inc., 718 So.2d 658 (Ala.1998), quoting Ex parte Gauntt, 677 So.2d 204, 221-22 (Ala. 1996) (Maddox, J., dissenting) (overruled by First Family). Further, with the adoption of § 6-3-21.1, the Legislature not only granted the right, but also imposed the duty on a circuit court, to transfer a case to another proper forum if, under the facts of the case, the interest of justice so requires. First Family, 718 So.2d at 661.
The judge of the circuit court in which this action was filed granted the defendant's motion to transfer. Although the trial court did not provide an analysis of its reasons for doing so, it appears to me, based on what is currently before this Court, that the trial judge's decision to grant the motion to transfer the case is consistent with § 6-3-21.1, Ala.Code 1975. Compare First Family, where the trial court had refused to grant a motion to transfer. In that case, the plaintiff sued in a county where the defendant "maintained no office, and kept no documents," where the plaintiff did not live, and where no meetings between the plaintiff and the defendant had taken place. 718 So.2d at 662. This Court issued a writ of mandamus directing the trial court to transfer the case, holding that, under those facts, the "interest of justice" required the transfer, and that it was an abuse of discretion for the trial court to deny the transfer.[5]
I do not believe the petitioner has shown a clear legal right to an order retransferring the case and, therefore, I would not hold that the trial judge committed an abuse of discretion. I must therefore dissent from the main opinion as to this issue.

*34 On Application for Rehearing

ALMON, Justice.
The respondents' application for rehearing "seeks rehearing only with regard to the discovery issues addressed in Part I of the Opinion." After this Court released its opinion on September 25, 1998, Ex parte Tidwell Industries, Inc., 480 So.2d 1201 (Ala. 1985), came to the Court's attention. The respondents have not contended, either on original submission or on application for rehearing, that the petition should be denied as to the venue question because it sought a writ addressed to the Henry County Circuit Court rather than to the Houston County Circuit Court. Because this Court, before Tidwell came to our attention, had determined on the merits that the transfer was erroneous, and because the application for rehearing does not seek a reconsideration of the venue question, we do not decide whether Tidwell would have supported a denial of the petition if the respondents had cited it. The arguments regarding the discovery issue are not persuasive, and the application is overruled.
APPLICATION OVERRULED.
HOUSTON, KENNEDY, COOK, and LYONS, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
NOTES
[1] See 660 F.Supp. at 1451 ff.
[2] Indeed, the policies could not explain the effect of an oversale, because all affected policies were sold long before the 1978 consent judgment in Battle was entered.
[3] When John Robert Holman came to his house to pick up Mrs. Hicks's body, Hicks thought her policy had a face value of $500. It in fact was for $300. This difference is insignificant, because, according to Hicks's evidence, Holman assured him that his mother's "Liberty National" policy would provide only a credit for the face amount and that there was no need to show the policy to Holman at that time.
[4] Interrogatories 24 and 25 are not before us, but the defendants' answers are. Those answers give annual numbers for unspecified events at the defendants' two funeral homes from 1990 or 1991 through 1995.
[5] Compare also Ex parte Independent Life & Accident Ins. Co., 725 So.2d 955 (Ala.1998).