[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 78 
Altonie Henry sued Kansas City Life Insurance Company ("KC Life") and one of its agents; her action is pending in the Mobile Circuit Court. She petitions for a writ of mandamus directing that court to vacate its order of October 7, 1998, wherein it set out certain conditions for Henry to comply with before proceeding with a portion of the discovery process. Additionally, Henry asks us to direct the circuit court to vacate its orders of April 24, 1998, October 26, 1998, and November 9, 1998, quashing several nonparty subpoenas issued to various insurance companies for whom John T. Walley, a defendant in Henry's pending action, had acted as an agent.
On November 14, 1994, Henry purchased a "whole life" insurance policy, in the face amount of $25,000, from KC Life, through its agent Walley. Henry paid the first month's premium of $52.98, in cash, to Walley. Thereafter, KC Life billed Henry directly for each monthly premium. Henry arranged with Walley to pay the premium to him in cash each month when he came by her house. Henry paid her monthly premium to Walley each month until October 1995, a total of 12 payments. However, only 5 of the 12 payments were credited to her policy. Henry claimed that KC Life or Walley had converted the remaining 7 premium payments.
Before he was employed with KC Life, Walley had been employed for 23 years as an agent with American General Life Insurance Company ("American General"). American General had terminated Walley's employment in 1994 for stealing a policyholder's premiums by forging the policyholder's signature to a premium-refund check. Within a month of his termination, Walley became an agent for KC Life. Henry contends that Walley was not truthful when he completed the application to become a licensed agent for KC Life. KC Life submitted Walley's license application to the Alabama Department of Insurance, along with an endorsement stating that Walley was "an individual of good business standing and character" and that KC Life was "satisfied that the applicant [was] trustworthy and qualified to act as [its] agent."
Henry sued KC Life and Walley, alleging misrepresentation, deceit, and fraudulent suppression, and seeking damages to include compensation for mental anguish. As to KC Life separately, Henry alleged that it had been negligent or wanton in *Page 79 
hiring, training, supervising, and retaining Walley as its agent. Specifically, Henry claimed that information concerning Walley's misconduct and his subsequent termination from American General had been available to KC Life at the time it hired him. Moreover, Henry claimed, KC Life knew when it hired him that Walley had been terminated by American General for conversion but nevertheless represented to the Alabama Department of Insurance that he was "honest and trustworthy."[1]
Along with the complaint, Henry filed certain interrogatories and requests for production. Interrogatory no. 13 and request for production no. 14 read as follows:
 "13. State the name, address and telephone number of each and every person or other legal entity who purchased a life insurance policy from defendant, Walley, which was issued by defendant, Kansas City Life from 1992 until the present."
 "14. Produce all applications relative to any Kansas City Life insurance policies sold by defendant, Walley, from 1992 until the present."
KC Life filed numerous objections, including objections to these two items. Henry filed a motion to compel answers and production. On October 7, 1998, the trial court granted Henry's motion to compel as to interrogatory no. 13 and request for production no. 14, but limited those discovery requests so as to relate only to those policies purchased in Alabama. Additionally, the court permitted KC Life to redact the policyholders' responses to health-related questions contained in those policies. Henry does not object to these restrictions. The court's order placed one final limitation on Henry's discovery:
 "The court further ORDERS that counsel for the plaintiff shall submit to the Court a proposed letter for the Court's review and approval prior to any contact with any person made known to the plaintiff through the discovery items mentioned above. Said letter should make the recipient take the affirmative step of contacting the plaintiff's attorney if they so wish."
Henry objected to this limitation on her right of discovery.
Henry also had several nonparty subpoenas issued to various insurance companies for which Walley had acted as an agent. On April 24, 1998, the trial court entered an order quashing those nonparty subpoenas. Later, Henry filed notices of intent to seek the issuance of additional nonparty subpoenas to other insurance companies by which Walley had been employed. On October 26, 1996, and on November 9, 1998, the trial court quashed the additional nonparty subpoenas. On December 2, 1998, Henry filed this petition for the writ of mandamus.
 I.
Rule 26, Ala.R.Civ.P., governs the discovery of information in civil actions. When a dispute arises over discovery matters, the resolution of the dispute is left to the sound discretion of the trial court. "Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. ColonialBank, 612 So.2d 1146, 1146 (Ala. 1992) (citations omitted); see also Exparte Hicks, 727 So.2d 23, 33 (Ala. 1998) (Maddox, J., dissenting).
Petitioning for the writ of mandamus is the proper method for determining whether a trial judge has abused his discretion in limiting discovery. Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala. 1981). The writ of mandamus is a drastic and extraordinary remedy, to be issued only when there is (1) a clear legal right in *Page 80 
the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Horton, 711 So.2d 979, 983 (Ala. 1998) (citing Ex parteUnited Serv. Stations, Inc., 628 So.2d 501 (Ala. 1993)); Ex parte Alfab,Inc., 586 So.2d 889, 891 (Ala. 1991) (citing Martin v. Loeb Co.,349 So.2d 9 (Ala. 1977)). Moreover, this Court will not issue a writ of mandamus compelling a trial judge to alter a discovery order unless this Court "determines, based on all the facts that were before the trial court, that the trial court clearly abused its discretion." Ex parteHorton, 711 So.2d at 983. Moreover, "`[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief,' and `[t]he writ will not issue where the right in question is doubtful.'" Ex parte Bozeman, 420 So.2d 89,91 (Ala. 1982) (quoting Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102
(Ala. 1981)).
An insurance company's policyholder lists are confidential proprietary information to which a litigant has no right except through court-ordered discovery. Ex parte Stephens, 676 So.2d 1307, 1316 (Ala. 1996) (Houston, J., dissenting); Ex parte Mobile Fixture Equip. Co.,630 So.2d 358 (Ala. 1993); Ex parte McTier, 414 So.2d 460 (Ala. 1982).
"The first step in determining whether the court has abused its discretion is to determine the particularized need for discovery, in light of the nature of the claim." Ex parte Rowland, 669 So.2d 125, 127
(Ala. 1995). A plaintiff in a fraud action "is accorded a broader range of discovery in order to meet the heavy burden imposed on one alleging fraud." Ex parte Clarke, 582 So.2d 1064, 1067 (Ala. 1991). Here, just as in Rowland, the complaint alleged that the plaintiff had been defrauded by an insurer and its agent. Because she is alleging fraud, Henry is entitled to broader discovery than would normally be allowed. "When the discovery request of a plaintiff alleging fraud is closely tailored to the nature of the fraud alleged, the discovery should be allowed in full, as long as the party opposing discovery does not show that the requested discovery is oppressive or overly burdensome." Exparte Horton, 711 So.2d at 983.
Henry's discovery requests sought the name of every person who had purchased a life insurance policy through Walley and issued by KC Life, since 1992, together with a copy of the application for the policy. These requests were overly broad and were not closely tailored to the nature of the fraud alleged in the complaint.[2] The trial court ordered that KC Life provide Henry with a list of the names of individuals in Alabama who had purchased such policies. Given that Walley and Henry were both residents of Mobile County, that Walley's alleged misconduct occurred in Mobile County, and that Henry filed her action in the Mobile Circuit Court, it would seem logical that most of Walley's sales for KC Life would have occurred within Alabama. Indeed, for the trial court not to restrict the discovery of other policyholders and their applications to Alabama would have made compliance with the requests unduly burdensome on KC Life. See Ex parte Finkbohner,682 So.2d 409, 413 (Ala. 1996). Thus, we conclude that the trial court properly limited Henry's discovery to the names of persons in Alabama who had purchased KC Life policies from Walley, together with copies of their redacted applications.
Although the trial court ordered KC Life to provide Henry with the names and applications of every person in Alabama *Page 81 
who had purchased a life insurance policy from KC Life, through Walley, since 1992, it placed certain conditions on how Henry could contact these persons. The judge ordered that Henry submit a proposed letter for the judge to review and approve before she could contact any person whose name had been provided in response to her discovery requests. Moreover, the court ordered, the letter "should make the recipient take the affirmative step of contacting the plaintiff's attorney if they so wish." This limitation was not an arbitrary limitation on Henry's right to conduct full and meaningful discovery in the manner she saw fit. Rather, the court was simply exercising the power and discretion afforded it in performing its obligation to oversee discovery matters. "Let the trial court be the trial court, without microscopic manipulation of its discretion by this Court." Ex parte Howell, 704 So.2d 479, 483 (Ala. 1997) (Houston, J., dissenting).
Henry has not shown a clear abuse of discretion that would entitle her to a writ of mandamus. The trial court's order allows her to get the names of all persons in Alabama who had purchased a life insurance policy from KC Life, through Walley, since 1992, and it allows her the right to contact those persons. It was within the court's discretion to place limitations on the method Henry used to contact those persons.
We recognize that this holding conflicts with prior cases involving the question whether a trial judge clearly abused his discretion by placing limitations on the method by which the plaintiff's attorneys could contact other policyholders. See, e.g., Ex parte Hicks, supra; Ex parteStephens, supra. To the extent those cases conflict with today's holding, they are overruled.
 II.
Henry also argues that we should issue the writ on the basis that she had a clear legal right to discover the information she sought by issuance of the nonparty subpoenas that were quashed by the trial court.
Henry sued Walley and KC Life on October 29, 1997. She alleged that Walley and KC Life (under a theory of vicarious liability) were liable for misrepresentation, deceit, and fraudulent suppression as a result of Walley's conversion of her premium payments. Additionally, Henry alleged that KC Life was directly liable to her on the basis that it had negligently or wantonly hired and supervised Walley, and, through its negligence or wantonness, had allowed him to steal her premium payments.
Henry's direct claims against KC Life were dismissed, on the basis that she had filed her action more than two years after those claims had accrued and, thus, that they were barred by the statute of limitations. (§ 6-2-38(l), Ala. Code 1975.) See Booker v. United American Ins.Co., 700 So.2d 1333, 1339-40 (Ala. 1997). Nevertheless, Henry had caused the issuance of nonparty subpoenas, seeking production of Walley's personnel files from a number of insurance companies for which he had previously worked. The trial court quashed those subpoenas.
Henry contends that she was entitled to discover this information because, she says, "Alabama law provides that in order for [her] to recover punitive damages from KC Life for the wrongful acts of Walley, [she] must demonstrate that KC Life knew or should have known that Walley was unfit to act as a KC Life agent." As authority for this proposition, Henry cites § 6-11-27(a), Ala. Code 1975, which states:
 "A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: (i) knew or should have known of the unfitness of the *Page 82 
agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer, or other master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act."
Contrary to Henry's claim, KC Life could be vicariously liable for the misconduct of Walley — and thus be subject to the imposition of punitive damages — without evidence that it knew or should have known of the unfitness of its agent. See Alfa Mut. Ins. Co. v. Roush,723 So.2d 1250, 1255 (Ala. 1998) ("[A]n employer may be `vicariously liable for acts of its employee that were done for the employer's benefit, i.e., acts done in the line and scope of employment or . . . acts done for the furtherance of the employer's interest.'"). This Court has never held that the kind of discovery Henry seeks — discovery related to the question whether a principal/employer had knowledge of its agent/employee's unfitness — is permitted under § 6-11-27(a) in the absence of a claim of negligent or wanton hiring and/or supervision. In each of the cases wherein we have addressed the admissibility of such evidence, the plaintiff's claims sought both to impose vicarious liability for fraud and to recover for the principal's own negligent or wanton hiring and/or supervision. See Alfa Mut. Ins. Co. v. Roush, 723 So.2d at 1256-57; Life Ins. Co. of Georgia v. Johnson, 684 So.2d 685, 690
(Ala.), vacated on other grounds, 519 U.S. 923 (1996), overruled on other grounds, 701 So.2d 524 (Ala. 1997); Northwestern Mut. Life Ins. Co. v.Sheridan, 630 So.2d 384, 390 (Ala. 1993).
Sheridan involved the application of § 6-11-27(a) in the context of a stolen premium. There, the insurance company argued that § 6-11-27
shielded it from vicarious liability for punitive damages, because of a lack of evidence to prove the elements of § 6-11-27(a). Unlike Henry, the Sheridans did assert a timely claim alleging that the insurance company had negligently or wantonly hired and/or supervised its agent, together with a claim alleging fraud. We stated in Sheridan:
 "In this connection, it must be observed that § 6-11-27 modifies the common-law rule of vicarious liability by requiring proof of a higher degree of culpability on the part of the principal. Thus, as a logical matter, if plaintiffs can meet the statutory requirement for vicarious liability, they will, in many cases, also have established the elements of their claims for wantonness in the hiring and supervision of the agent."
630 So.2d at 390; but see Alfa Mut. Ins. Co. v. Roush, 723 So.2d at 1256 ("a plaintiff who establishes a principal's vicarious liability for its agent's acts does not automatically establish a claim of wantonness against the principal"). Implicit in this language in Sheridan is a recognition that information contained in an employee's personnel file is relevant to establish a claim of negligent or wanton hiring and/or supervision. Section 6-11-27(a) does not constitute a license for unlimited discovery as to all subjects listed therein. Instead, the statute merely identifies certain situations that, if proved by the evidence and material to the claims set forth in the complaint, would justify or support the imposition of punitive damages against a defendant, on the basis of that defendant's vicarious liability for the acts of another. Because the claim alleging negligent or wanton supervision and/or hiring is no longer a part of Henry's case, she is not entitled to discovery of information or materials that would be material only as to that claim, such as Walley's personnel files from prior employers. For us to hold otherwise would allow Henry, in essence, *Page 83 
to revive a time-barred claim against KC Life.
 III.
We conclude that the trial court did not abuse its discretion in limiting the manner by which Henry could contact others who had purchased life insurance policies from KC Life, through John Walley. We further conclude that the trial court did not abuse its discretion in quashing the nonparty subpoenas that sought information relevant only to a claim that had been dismissed because it was barred by the statute of limitations.
 WRIT DENIED.
Hooper, C.J., and Maddox, Houston, and See, JJ., concur.
Lyons, J., concurs in part and concurs in the result in part.
Cook, Johnstone, and England, JJ., dissent.
[1] However, the separate claims against KC Life were dismissed on the basis that they were barred by the two-year statute of limitations.
[2] Given that the record before us does not contain a copy of Henry's complaint, we are unable to say what the precise nature of the fraud alleged to have been committed by Walley and/or KC Life was, other than that the fraud was in some way connected to Walley's conversion of her premium payments.