I respectfully dissent from the denial of a writ of mandamus. The writ should issue to redress both of the erroneous discovery decisions by the trial court.
The first erroneous discovery decision by the trial court is its limitation on the plaintiff's communication with certain potential material witnesses. The trial court correctly allows the plaintiff discovery of the names, addresses, and telephone numbers of certain "person[s] or other legal entit[ies] who purchased . . . life insurance polic[ies] from defendant, Walley, which [were] issued by defendant, Kansas City Life from 1992 until the present." However, contrary to the express holdings of Ex parte Stevens, 676 So.2d 1307 (Ala. 1996), Exparte Howell, 704 So.2d 479 (Ala. 1997), and Ex parte Hicks, 727 So.2d 23
(Ala. 1998), the trial court erroneously imposed the following restriction on the plaintiff:
 "The Court further ORDERS that counsel for the plaintiff shall submit to the Court a proposed letter for the Court's review and approval prior to any contact with any person made known to the plaintiff through the discovery items mentioned above. Said letter should make the recipient take the affirmative step of contacting the plaintiff's attorney if they so wish."
This restriction unduly curtails the plaintiff's discovery rights. First, inevitably many of these potential witnesses will fail to "take the affirmative step of contacting the plaintiff's attorney," because of either oversight, lack of incentive, common inertia, or the pervasive psychology of not wanting to "get involved." Second, the restriction is arbitrarily discriminatory. Not only does our law not allow such a restriction on this category of witness, but likewise our law does not allow such a restriction on any other category of witness. For instance, would this Court countenance for one minute a trial judge's so restricting a defendant in its communications with doctors who had treated a plaintiff for a condition at issue, or with a plaintiff's friends or acquaintances who might know facts relating to liability or damages, or with a plaintiff's former employers *Page 84 
who might know the plaintiff's habits or complaints relating to liability or damages?
The main opinion resolves the problem of the trial judge's above-quoted restriction simply by expressly overruling Ex parte Hicks, supra, Exparte Stevens, supra, and "prior cases" to like effect and adopting a conclusion contrary to those precedents without stating any reason whatsoever for disregarding the doctrine of stare decisis. To overrule a precedent without stating any good reason for making an exception to the doctrine of stare decisis seems to abandon the rule of law. The case ofLindsay v. United States Savings Loan Ass'n, 120 Ala. 156, 167,24 So. 171 (1897), is instructive on stare decisis:
 "It must be admitted that whatever may have been the differences of opinion as to the nature or character and obligation of the transactions involved, and whatever . . . room for such differences may have existed, having passed deliberate judicial exposition and declaration, a due regard for the maxim of stare decisis would have compelled judicial adherence, silencing controversy. `To consider matters thus adjudged as open to reiterated discussions would lead to great public inconvenience.' It would lessen confidence in the dignity and stability of the judgments of this, the court of last resort, provoking litigation or its continuance. The observations of Chancellor Kent are instructive, and have been often quoted by courts and text writers: `If a decision has been made upon solemn and mature consideration, the presumption is in favor of its correctness, and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions by it. It would, therefore, be extremely inconvenient to the public if precedents were not duly regarded and implicitly followed.' And further: `When a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review and never by the same court, except for very urgent reasons, and upon a clear manifestation of error; and, if the practice were otherwise, it would be leaving us in a perplexing uncertainty as to the law.'"
The second erroneous discovery ruling by the trial court is its order quashing certain nonparty subpoenas issued by the plaintiff seeking information that Kansas City Life knew or should have known of the unfitness of its agent Walley while he was committing his tortious acts against the plaintiff. Section 6-11-27(a), Ala. Code 1975, authorizes the introduction of such evidence to prove the vicarious liability of a principal for punitive damages for the wrongful conduct of an agent under the doctrine of respondeat superior:
 "A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: (i) knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant, or employee were calculated to or did benefit the principal, employer, or other master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act."
Rule 26(b)(1), Ala.R.Civ.P., provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." Rule 401, Ala. R. Evid., provides: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of *Page 85 
consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Committee's Notes explain:
 "Rule 401 merges the separate evidentiary concepts of materiality and relevancy. No relevant evidence is to be admitted unless its logical relevancy goes toward a fact or inference that is `of consequence to the determination of the action.' By use of this phrase, Rule 401 adopts the common law materiality concept, as that concept has evolved."
All that § 6-11-27(a), supra, addresses are the requirements for imposing punitive damages in a claim of indirect, or vicarious,liability, which the plaintiff is pursuing. Yet the main opinion deprives the plaintiff of her discovery on the rationale that she does not have a direct-liability claim against the defendant.
The plaintiff began this action by asserting claims of direct liability as well as claims of indirect, or vicarious, liability against Kansas City Life Insurance Company. The claims of direct liability were for Kansas City Life's alleged negligence and wantonness in the hiring, training, supervision, and retention of Walley as its agent. The trial court dismissed these claims of direct liability; and the plaintiff does not contest the dismissal of these direct-liability claims. Rather, the plaintiff is pursuing her claims of indirect, or vicarious, liability against Kansas City Life for the wrongful conduct of its agent Walley under the doctrine of respondeat superior.
The main opinion, however, says,
 "This Court has never held that the kind of discovery Henry seeks — discovery related to the question whether a principal/employer had knowledge of its agent/employee's unfitness — is permitted under § 6-11-27(a) in the absence of a claim of negligent or wanton hiring and/or supervision."
770 So.2d at 82. The main opinion is saying, in effect, that the right to this type of discovery is dependent on the existence of a distinct or independent claim of direct liability against a principal for "negligent or wanton hiring and/or supervision." But § 6-11-27(a) contains no such requirement.
By its own terms, § 6-11-27(a) governs indirect or vicarious, liability of the principal — that is, the liability of the principal for the conduct of an agent — as distinguished from the direct liability of the principal for its own wrongdoing in negligently or wantonly hiring, training, supervising, or retaining the agent. Section 6-11-27(a) does not in any way require either the existence or the nonexistence of a distinct or independent claim against the principal on a theory of direct liability. Rather, this code section is entirely devoted to stating the requirements for recovering punitive damages against a principal on a claim of indirect, or vicarious, liability for the wrongful conduct of an agent under the doctrine of respondeatsuperior.
For a plaintiff to recover punitive damages against a principal for vicarious liability for the wrongful act of the agent, § 6-11-27(a) requires proof of at least one of four kinds of culpability in addition to the essential elements of the tort and the agency traditionally recognized by common law for vicarious liability. One of these four kinds of additional culpability alternatively required by § 6-11-27(a) for vicarious liability for punitive damages is that the principal "(i) knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others." Northwestern Mut. Life Ins. Co. v. Sheridan,630 So.2d 384 (Ala. 1993). The statutory addition of this culpability to the essential elements necessarily authorizes the discovery and proof of this culpability. The fortuity that such discovery and proof might also discover and prove a claim of direct liability against the principal for negligence or wantonness in the hiring, training, supervision, or retention of the *Page 86 
agent, see Sheridan, supra, in no way makes the existence of a distinct or independent direct-liability claim a prerequisite to such discovery or proof. The trial court order quashing the plaintiff's subpoenas and today's decision's denial of a writ of mandamus to vacate that order by the trial court deprive this plaintiff of her right to discover and to prove a case for punitive damages against this defendant in a way expressly authorized by § 6-11-27(a). This injustice is not eliminated or ameliorated by the existence of the three other alternatives provided by this Code section, as the actual circumstances of the particular case before us may or may not include these three other alternative kinds of culpability.
Cook and England, JJ., concur.